**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0432n.06
Filed: July 18, 2008

No. 07-3750

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

VERONICA GOLLER, )
  )
     **Plaintiff-Appellant,** )
  )
  ) **ON APPEAL** FROM THE
v. ) UNITED STATES DISTRICT
  ) COURT FOR THE NORTHERN
  ) DISTRICT OF OHIO
OHIO DEPARTMENT OF )
REHABILITATION AND )
CORRECTION et al., )
  ) **O P I N I O N**
  )
     **Defendants-Appellees.** )
_____ )

Before: **MERRITT, MOORE, and ROGERS, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.** Veronica Goller ("Goller"), a white female,

filed suit in the United States District Court for the Northern District of Ohio alleging reverse-race

discrimination, sex discrimination, retaliatory discharge, and a hostile work environment in violation

of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as well as Ohio Revised Code

§§ 4112.02 and 4112.99. At the district court, Goller abandoned her sex-discrimination and state-

law claims. The district court subsequently granted summary judgment to the Ohio Department of

Rehabilitation and Correction Northeast Pre-Release Center ("NEPRC") regarding the remainder

of Goller's claims. For the reasons explained below, we **AFFIRM** the district court's grant of

summary judgment to NEPRC with respect to Goller's reverse-race-discrimination and hostile-work-

environment claims. We **REVERSE** the district court's grant of summary judgment to NEPRC with

respect to Goller's retaliatory-discharge claim and **REMAND** for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURE

### A. Factual Background

Goller commenced employment at NEPRC on December 28, 2003, as a probationary corrections officer. NEPRC terminated Goller's employment, prior to the end of her one-year probation period, on September 1, 2004.

A significant portion of the record in this case concerns the negative performance reports given Goller by supervisors of both Caucasian and minority racial backgrounds, but because NEPRC does not cite these reports as the reason for Goller's termination they are immaterial to our decision. The crux of this case concerns Goller's treatment by Captain Donna Smith, an African-American female who was Goller's direct supervisor as of May 2004, as well as the disciplinary reports that Smith filed concerning Goller. There exists no factual dispute that animosity existed between Smith and Goller. Lieutenant Catherine Cruz ("Cruz") also supervised Goller during the period that Smith oversaw directly Goller's shift; Cruz stated that Smith treated Goller in a more harsh and punitive manner than all other probationary employees. Goller's fellow officer Cecilia Chobody ("Chobody") stated that Smith wrote up Goller for petty infractions even though Smith did not do the same for other supervisees. Chobody, however, could not remember specific incidents of differential treatment.

The evidence points to more than one source of the conflict between Goller and Smith. Goller alleges that the source of Smith's hostility was racial. To this end, Goller presents Chobody's deposition testimony that Smith "doesn't like white people." Joint Appendix ("J.A.") at 112

2

(Chobody Dep. at 22). Chobody stated that Smith would choose African-American rather than white employees for favorable special duties and would selectively help African-American employees get out of trouble. Another white officer, Carrie Heavrin, testified during her deposition that Smith treated white employees "poorly" and was "back stabbing" and "nasty." J.A. at 205 (Heavrin Dep. at 30). Evidence also exists, however, suggesting that Goller and Smith shared a personality conflict, regardless of any racial bias held by Smith. Goller stated in her deposition that she believed Smith and another supervisor felt intimidated by her: "[I]f I got promoted, I'd be working side by side with them. I'm one of the few there that do have an Associate's degree, and she knows I'm climbing the ladder . . . I'm intelligent, a good-looking female, and they don't like that." J.A. at 166 (Goller Dep. at 120).

Whether motivated by reverse racism or a personality conflict, the hostility between Smith and Goller manifested itself in the form of Smith's calling Goller derogatory names that invoked racial as well as gender-based stereotypes. Smith repeatedly referred to Goller using the terms "white Barbie," "white cupcake," "white princess," "little miss thing," and "girl with the silver spoon." J.A. at 107-08 (Chobody Dep. at 10-11); J.A. at 145 (Goller Dep. at 30); J.A. at 200 (Heavrin Dep. at 16). *But see* J.A. at 120 (Cruz Dep. at 13) (stating that Cruz heard inmates and staff but not Smith refer to Goller as "Barbie"); J.A. at 133-34 (Farnan Dep. at 28-29) (stating that Farnan never heard Smith refer to Goller using derogatory names). Goller estimates that Smith called her "Barbie" about thirty times between February and June 2004, although Goller does not specify whether all these incidents included the modifier "white." J.A. at 150 (Goller Dep. at 35).

In addition to the derogatory slurs, Goller presents evidence of three specific incidents in which Smith disciplined her in an allegedly unfair manner. First, Smith issued a misconduct report

when Goller punched-in less than one minute before she was eligible to do so one half-hour before the beginning of her shift. Second, in response to a report filed by one of Goller's coworkers, Smith filed a misconduct notice stating that the coworker had heard Goller refer to an inmate as a "pill thief" and low-class person, in violation of employee standards. Third, Goller alleges that Smith filed a false incident report stating that Goller refused to give an officer relieving her the keys and three "chits" that, according to NEPRC security procedures, must be exchanged for handcuffs, keys, and radio. In contrast with the report's narrative of the incident, Goller alleges that the relieving officer refused to take her keys and chits, forcing Goller to give them to control, who then gave them to the officer.

Both parties to this case agree that the last incident involving the failed exchange of chits and keys precipitated Goller's termination. NEPRC Warden Donald Franklin Shewalter made the decision to terminate Goller. Shewalter stated in his deposition that "[t]he final thing that caused [him] to decide to remove [Goller] was the incident in the entry building" in which Goller reportedly did not turn in her keys and chits. Dist. Ct. Record #16 at 52 (Shewalter Dep.). Shewalter justified the decision: "This incident is extremely serious in my mind, so something I won't tolerate." *Id.* at 56. He further explained: "Regardless of what [Goller's] reasoning is . . . she did turn her equipment in. If there was some issue between the two [officers] she did not make the supervisor aware of it. She put several staff's lives in jeopardy by leaving the most critical post in the institution unattended." *Id.* at 57. Shewalter reiterated that Goller did not follow proper procedure: "All post orders . . . and training sessions and everything indicate that you have to be properly released. You have to properly exchange your keys, chits, and equipment and verbal exchange of what is happening and what to expect on the oncoming shift." *Id.* at 66-67. Shewalter was not

4

aware of any dispute regarding the circumstances of the incident in which Goller did not exchange her chits and keys. *Id.* at 54. Shewalter stated that he made the decision to terminate Goller in consultation with the Deputy Warden and Major. *Id.* at 60. According to Shewalter, Shewalter, the Deputy Warden Jack Dunns ("Dunns"), and Chief of Security, Major Michael Griffith ("Griffith"), may have asked Smith her opinion about Goller, but they did not directly involve Smith in the termination decision. *Id.* at 60; *see also id.* at 23 (providing names and titles).

Evidence also exists, however, showing that prior to receiving Smith's report about the chits incident, Shewalter had received notice that Goller perceived Smith as treating her in a racially discriminatory manner. Goller alleges that she complained to Shewalter about Smith's treatment of her at least three times prior to her termination. Although Goller did not recall at deposition the exact statements that she made to Shewalter during these meetings, she testified that she related to Shewalter that Smith swore at her, called her "white Barbie" and "white cupcake," exhibited hostility toward her, and harassed her. Shewalter remembers having a single conversation with Goller about one of her supervisors about two months before her termination, but cannot recall whether that supervisor was Smith. Shewalter referred Goller's complaint to Dunns and Griffith but did not discuss the matter with any of Goller's supervisors. Shewalter stated that the Major met with Goller regarding her performance deficiencies, but Shewalter also stated that he did not know whether the Major or Deputy Warden met with Smith regarding Goller's complaints. Shewalter further alleged that Goller did not take either of the two formal procedures available to employees who had problems with their supervisors: registering a complaint or reporting an issue via a grievance procedure.

**B. Procedural History**

On June 28, 2005, the Equal Employment Opportunity Commission issued Goller a right-to-sue letter regarding the discrimination charges she filed with the Ohio Civil Rights Commission. Goller filed a complaint in the United States District Court for the Northern District of Ohio, alleging race and sex discrimination, retaliation, and a hostile work environment in violation of Title VII and the Ohio Revised Code. Goller's complaint listed three defendants: NEPRC; Greg Trout, Chief Counsel of the Ohio Department of Rehabilitation and Correction; and the Attorney General for the State of Ohio. J.A. at 5 (Compl. at 1). The substance of Goller's complaint, however, alleged discrimination on the part of NEPRC alone and did not mention the other two defendants. After NEPRC filed a motion for summary judgment and Goller filed a brief in opposition, the district court granted summary judgment to NEPRC regarding Goller's reverse-race discrimination, retaliatory-discharge, and hostile-work-environment claims. The district court also dismissed all of Goller's claims against the other two defendants, finding that "no claims were specifically alleged against the Ohio Attorney General's office since it was sued in its representative capacity, and, there being no legal distinction between the Ohio Department of Rehabilitation & Corrections and NEPRC, the summary judgment disposes of all claims against all parties." *Goller v. Ohio Dep't of Rehab. & Corr.*, No. 1:05CV2256, 2007 WL 1165799, at *1 (N.D. Oh. April 12, 2007). Goller does not appeal the district court's judgment regarding the defendants other than NEPRC.

## II. ANALYSIS

**A. Standard of Review**

We review the district court's order granting summary judgment de novo. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). "Summary judgment is proper if the evidence, taken in the light

6

most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 363 (6th Cir.), *cert. denied*, --- U.S. ---, 128 S. Ct. 201 (2007); Fed. R. Civ. P. 56(c). The panel must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Bryson v. Regis Corp.*, 498 F.3d 561, 569 (6th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). The nonmoving party "must present more than a mere scintilla of evidence in support of his position." *Harrow Prods., Inc. v. Liberty Mut. Ins. Co.*, 64 F.3d 1015, 1019 (6th Cir. 1995).

## B. Goller's Reverse-Race-Discrimination Claim

Goller argues that Smith's derogatory name-calling amounts to direct evidence of discrimination. We agree with the district court's determination that Goller has not produced direct evidence of race discrimination. *Goller*, 2007 WL 1165799, at *3. "Direct evidence of discrimination is 'that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)). Smith's use of derogatory racial slurs cannot constitute direct evidence of discrimination because a significant inference would be required for a factfinder to conclude that *Smith's* racial animosity motivated *Shewalter's* decision to terminate Goller. *Cf. Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1249 (6th Cir. 1995) (holding that use of racial slurs by managers responsible for the decision regarding a plaintiff's termination constitutes direct evidence).

7

Because Goller presents only circumstantial evidence of discrimination, she must proceed under the *McDonnell Douglas* burden-shifting framework. The Sixth Circuit has adapted this framework in cases alleging reverse-race discrimination, requiring that plaintiffs establish the first prong of a prima facie case by showing "background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 255 (6th Cir. 2002) (quoting *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985)). We are bound by this precedent.[1] *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985). Plaintiffs may show such "background circumstances" using "evidence of [defendants'] unlawful consideration of race as a factor in hiring in the past[,] [which] justifies a suspicion that incidents of capricious discrimination against whites because of their race may be likely." *Zambetti*, 314 F.3d at 256. The second and third prongs remain familiar: that the plaintiff was qualified for the job and suffered an adverse employment action, respectively. *Murray*, 770 F.2d at 66. Under the fourth prong of the prima facie test, a "[p]laintiff must show that the [defendant employer] treated differently similarly situated employees of a different race." *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008).

The district court concluded that Goller had failed to establish a prima facie case using circumstantial evidence because she did not show any background circumstances suggesting that NEPRC is that unusual employer who discriminates against the majority and because Goller could

---

[1]Although a number of our sister circuits follow the "background circumstances" rule, *see, e.g.*, *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 456-57 (7th Cir. 1999), other circuits do not. *See*, *e.g.*, *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 426 (5th Cir. 2000). We require a showing of "background circumstances" to satisfy the first prong of the prima facie test in a case of reverse-race discrimination. *Jasany v. United States Postal Serv.*, 755 F.2d 1244, 1252-53 (6th Cir. 1985); *see also Boger v. Wayne County*, 950 F.2d 316, 325 (6th Cir. 1991).

not show that she was treated differently than similarly situated employees. *Goller*, 2007 WL 1165799, at*4-*5. We agree that Goller can meet neither the first nor the fourth prong of the test for establishing a prima facie case of reverse-race discrimination. She has produced no evidence of NEPRC's past hiring, promotion, or termination practices and, therefore, cannot show that NEPRC is that unusual employer that discriminates against the majority.

Furthermore, Goller has produced no evidence that she was replaced by a non-white employee or that similarly situated African-American or other minority employees experienced more favorable treatment than she did. Although the requirement that a plaintiff compare her treatment to those of similarly situated employees does not require proof that the employees were *identically* situated, it does require proof "that all of the *relevant* aspects of [the plaintiff's] employment situation were 'nearly identical' to those of [the comparators'] employment situation." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)). Goller's deposition, as well as the depositions of Chobody and Heavrin, produced general allegations that Smith treated African-American employees better than white employees. Goller, however, has not produced any evidence that minority probationary corrections officers who committed infractions of equal gravity experienced differential treatment by NEPRC.

Goller's general allegations of dissimilar treatment are analogous to those made by the plaintiff in *Arendale*, 519 F.3d at 591, which we found insufficient to establish a prima facie case. In *Arendale*, a white police officer alleged that his African-American supervisor unfairly berated white officers but did not treat African-American officers in a similarly negative manner. Arendale did not produce evidence, however, that minority officers who, like him, had engaged in

9

insubordination or other misconduct, had received lesser discipline. *Id.* at 603-04. We, therefore, determined that Arendale's non-specific allegations of less favorable treatment were insufficient to satisfy the similarly situated standard. *Id*. at 604. We reach the same conclusion in the instant case. Because Goller can establish neither the fourth nor the first prong of her prima facie case, we affirm the grant of summary judgment to NEPRC regarding Goller's race-discrimination claim.

## C. Goller's Retaliatory-Discharge Claim

### 1.

The district court concluded that Goller had failed to establish a prima facie case of retaliatory discharge because she could not show causation of her termination by her complaints to Shewalter regarding Smith. *Goller*, 2007 WL 1165799, at *6. Goller argues that she has created a genuine issue of material fact that NEPRC retaliated against her for complaining about Smith's racially discriminatory treatment of her. To prove a prima facie case of retaliation under Title VII, a plaintiff must show that (1) she engaged in protected activity; (2) the defendant knew of her exercise of this civil right; (3) the defendant subsequently took an adverse employment action; and (4) that a causal connection exists "between the protected activity and the adverse employment action." *E.E.O.C. v Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir. 1997). "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 2415 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

The record shows that Goller complained to Shewalter about Smith's treatment of her, including Smith's use of racially derogatory terms. J.A. at 170-74 (Goller Dep. at 139-43).

10

Evidence exists, therefore, to substantiate that Goller engaged in a protected activity and that Shewalter knew about Goller's exercise of her rights. Because Goller subsequently suffered termination, she has established the first three prongs of a retaliatory-discharge claim. The critical question respecting Goller's prima facie case is whether Goller has established a causal connection between her complaints and her discharge. The strongest argument in favor of a causal connection is the temporal proximity between Goller's discussion with Shewalter and her termination. The district court dismissed temporal proximity as a factor because Goller did not remember when she lodged her complaints. *Goller*, 2007 WL 1165799, at \*6. Shewalter, however, stated that at least one conversation with Goller about her supervisor took place within the two months prior to Goller's termination. Viewing the facts in the light most favorable to Goller, we must assume that Shewalter's memory of the timing of the meeting is correct.

In *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516 (6th Cir. 2008), we identified two co-existing and compatible lines of cases within the Sixth Circuit regarding temporal proximity. "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Id.* at 525. "But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Id.* The Sixth Circuit has held that a three-month period between the protected activity and employee's termination is sufficient to create a causal connection for the purposes of establishing a prima facie case. *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004). Goller complained within two months of her

11

termination; thus, this case falls within the first category of cases identified by *Mickey*, in which temporal proximity is enough to generate an inference of retaliation.

Because NEPRC has produced a legitimate, non-retaliatory reason for the discharge—that Shewalter terminated Goller because she violated procedure and created a significant safety hazard by failing to exchange her keys and chits—the burden rests on Goller to prove pretext. *Id.* at 564. Goller need not produce any additional evidence beyond her prima facie case to prove pretext, but she must produce evidence sufficient to discredit and rebut NEPRC's proffered rationale. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146-49 (2000). Such evidence will permit but not compel a factfinder to reach a finding of retaliatory discharge. *Id.* To rebut NEPRC's rationale and establish pretext, Goller must show "either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate [her] discharge, or (3) that they were *insufficient* to motivate discharge." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

**2.**

Although Goller does not specify which of the above three avenues she is taking to establish pretext, her brief appears to argue that the keys/chits exchange incident had no basis in fact. Goller argues that Smith falsified the report about the incident because Goller had not refused to exchange her keys and chits; instead, the relieving officer had refused to take the keys and chits from her. Even if Smith had falsified or distorted the facts of the incident as a result of racial animus against Goller, however, this might not establish pretext because Shewalter and not Smith made the decision to terminate Goller. Under the Sixth Circuit's modified honest-belief approach, "for an employer to avoid a finding that its claimed nondiscriminatory reason was pretextual, 'the employer must be

12

able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made.'" *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2006) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir. 1998)). The evidence on the record, however, shows that a genuine issue of material fact exists regarding whether Shewalter reasonably relied on Smith's report regarding Goller's failure to exchange her keys and chits. Taking the evidence in the light most favorable to Goller, we must assume that Shewalter's three conversations with Goller put him on notice that Smith exhibited racial animosity toward Goller and had previously submitted false reports regarding Goller. Given this knowledge, Shewalter could not reasonably assume the factual veracity of Smith's report regarding the chits incident. Consequently, we conclude that NEPRC has not satisfied our honest-belief standard.

Viewed from another perspective, Goller's evidence regarding her conversations with Shewalter prior to the chits incident and to her termination is sufficient to rebut the legitimate, nondiscriminatory reason that NEPRC has advanced for her termination. "[T]o survive summary judgment a plaintiff need only produce enough evidence to support a prima facie case and to rebut, but not to disprove, the defendant's proffered rationale." *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 532 (6th Cir. 2007). Because Goller has shown that Shewalter did not reasonably rely on Smith's report regarding the chits incident in light of Goller's prior complaints about Smith's racial hostility and unfair treatment, we conclude that Goller has provided evidence that could have successfully rebutted NEPRC's proffered rationale. A reasonable factfinder could conclude that Shewalter terminated Goller in retaliation for the complaints she made regarding Smith. We therefore reverse the district court's grant of summary judgment to NEPRC regarding Goller's retaliatory-discharge claim.

13

**D. Goller's Hostile-Work-Environment Claim**

Goller argues that Smith's treatment of her created a racially hostile work environment. Hostile-work-environment claims proceed according to the *McDonnell Douglas* burden-shifting framework, and, ordinarily, a plaintiff establishes a prima facie case by showing "that (1) she is a member of a protected class; (2) she was subjected to unwelcomed racial harassment; (3) the harassment was race based; (4) the harassment unreasonably interfered with her work performance by creating an environment that was intimidating, hostile or offensive; and (5) employer liability."[2] *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007). "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). This standard strikes a balance between prohibiting "conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." *Id.* The standard has both an objective and a subjective component: the environment must be one "that a reasonable person would find hostile or abusive," and the plaintiff must "subjectively perceive the environment to be abusive." *Id.* at 21-22.

---

[2]Neither the Sixth Circuit nor its sister circuits have yet resolved whether the "background circumstances" requirement in reverse-race discrimination cases applies to hostile-work-environment claims. In applying the requirement to Goller's hostile-work-environment claim, the district court relied on an unpublished Sixth Circuit opinion, *Vitt v. City of Cincinnati*, 97 F. App'x 634 (6th Cir. 2004). *Goller*, 2007 WL 1165799, at *8. *Vitt*, however, applied the background-circumstances requirement to the plaintiff's claim that she suffered an adverse employment action on the basis of her race and not to her hostile-work-environment claim. 97 F. App'x at 638-39. We need not resolve this question, however, because Smith's harassment of Goller did not rise to the level of a racially hostile work environment.

Smith's harassment of Goller was not sufficiently severe or threatening to create a hostile work environment. In considering the severity and pervasiveness of the allegedly hostile work environment, we must assess "the totality of the circumstances." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999). Factors for consideration include the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. Goller could state only that Smith called her "Barbie" at least thirty times, and did not produce evidence of the frequency with which Smith called her an offensive term proceeded by the modifier "white." Smith never physically threatened Goller. Moreover, while offensive, the names Smith called Goller are readily distinguishable from racial slurs that reference a history of racial discrimination. *See, e.g.*, *Jordan v. City of Cleveland*, 464 F.3d 584, 596-97 (6th Cir. 2006) (holding that a plaintiff's racially hostile-work-environment claim should survive summary judgment when the plaintiff "was subject to a plethora of racially offensive jokes, racist graffiti and derogatory comments, including being called a 'Sambo' and a 'Welfare Fighter,'" as well as other forms of demeaning treatment). Furthermore, Goller alleged only that she found Smith's comments "offensive" and "inappropriate" and did not produce any evidence that they interfered with her work performance. J.A. at 166 (Goller Dep. at 120). We therefore affirm the grant of summary judgment to NEPRC with respect to Goller's hostile-work-environment claim.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment to NEPRC regarding Goller's reverse-race-discrimination and hostile-work-environment claims. We

**REVERSE** the district court's grant of summary judgment to NEPRC regarding Goller's retaliatory-discharge claim and **REMAND** for further proceedings consistent with this opinion.

**ROGERS**, concurring.  I concur in the result and in the majority opinion except for part II.C.2.  In my view, Goller has not demonstrated that NEPRC's proffered rationale for her termination has no basis in fact.  The basis in fact for the termination is that, *for whatever reason*, Goller failed to exchange her keys and chits properly.  Shewalter's deposition shows this:

[Shewalter]:  Regardless of what her reasoning is of not properly relieving that officer, I don't care if she likes it or not, she did turn her equipment in.  If there was some issue between the two she did not make the supervisor aware of it.  She put several staff's lives in jeopardy by leaving the most critical post in the institution unattended.

Q:  Even if the individual she was suppose [sic] to exchange the keys or chits with refused to take them from her?

[Shewalter]:  Absolutely.  At that point she is not authorized to abandon her post, which she did.  If there would have been an alarm or fire we would have had a more serious issue to discuss.

Goller does not dispute that she failed to exchange her keys and chits properly, but simply disputes the reason for her failure, which is not relevant to NEPRC's proffered rationale for her termination.  The effectively uncontroverted existence of a basis in fact for the termination means there is no warrant to examine whether Shewalter reasonably relied on Smith's report under our modified honest-belief standard.

I nonetheless concur in the outcome on the basis that Goller has raised a genuine issue of material fact regarding whether NEPRC's proffered reason actually motivated her discharge.  *See*

17

*Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). As the majority explains, Goller's conversations with Shewalter put Shewalter on notice of the animosity between Goller and Captain Smith, and a reasonable jury could conclude from Shewalter's less-than-extensive investigation into the veracity and circumstances of Captain Smith's report that a retaliatory motive lurked behind Goller's termination.