NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0082n.06

No. 21-5372

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 10, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| HARVELL HOOD, | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| CITY OF MEMPHIS PUBLIC WORKS | ) | |
| DIVISION, | ) | |
| | ) | OPINION |
| Defendant-Appellee. | ) | |
| | ) | |

Before: SUHRHEINRICH, CLAY, and DAVIS, Circuit Judges.

**CLAY, Circuit Judge**. Plaintiff Harvell Hood appeals the district court's order granting Defendants' motion for summary judgment. Hood alleges retaliation and race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*; 42 U.S.C. § 1981; 42 U.S.C. § 1983; the Tennessee Human Rights Act (the "THRA"), Tenn. Code Ann. §§ 4-21-101, *et seq.*; the Tennessee Public Protection Act (the "TPPA"), Tenn. Code Ann. § 50-1-304; and Tennessee's common law whistleblower protection. For the reasons set forth below, we **AFFIRM** the district court's judgment.

## I. BACKGROUND

### A. Factual Background

Harvell Hood, an African-American man, was employed as a part-time temporary crewman employee by Defendant, City of Memphis Public Works Division ("the City"), at the Stiles Waste Treatment Plant ("Stiles").

Hood alleges that while he worked for the City, he was subjected to sexual and racial discrimination, humiliation, and a hostile work environment by his supervisor. Through deposition testimony, Hood articulates specific instances of alleged harassment by his supervisor, Jeff Alloway. Hood alleges that Alloway made lewd statements to him and other workers, including "suck my penis" or "you look good on your knees." (Hood Dep., R. 69-26, Page ID #1908, 1914, 1935, 1949). Hood testified that Alloway also used racial slurs on the job, including calling him and other Black crewman the "N word." (*Id.*, Page ID #1908, 1923, 1935, 1949). Beyond this harassment, Hood testified that his crew was required to work in hazardous environments without proper safety equipment.

On September 22, 2016, Hood reported his claims for workplace discrimination and safety to the City's Labor Relations Department, now the City's Equity, Diversity and Inclusion Office ("EDI"). Responding to those claims, on November 15, 2016, the City, and Alloway's immediate supervisor, Jack Keith, conducted a fact-finding hearing regarding the charges against Alloway for respectful workplace and safety violations. Hood did not include his allegations of the use of racial slurs in his EDI report and those allegations were therefore not part of the investigation. Alloway admitted he had made the inappropriate sexual comments and the hearing panel found that Alloway violated the City's policies and procedures. Further, the hearing panel imposed a five-day suspension without pay against Alloway and also ordered him to attend a mandatory counseling program administered by the City Employment Assistance Program ("EAP"). By January 12, 2017, Alloway had successfully completed the EAP program and returned to work.

While the EDI investigation was underway, on October 13, 2016, Hood injured his left knee while working. He entered the City's "On the Job Injury" ("OJI") medical rehabilitation program. Hood's OJI treatment was overseen by Sedgwick, a third-party claims processing

service. When Hood went on OJI medical leave, he was left on the City payroll to retain eligibility for OJI benefits, but he did not receive other compensation. Hood received his last paycheck in November 2016. The City's OJI policy was that a claim would be denied if an employee did not follow the treating physician's orders and, as a result, could not be cleared for duty. The City only allowed employees to return to work after Sedgwick cleared them for full duty.

On January 26, 2017, Hood's physician wrote that he could be released to work full duty without restrictions. On the release form, Hood's physician advised for a follow-up appointment, but according to Hood, did not specify a date or alert him of an appointment. Sedgwick claims that Hood's physician alerted them that a follow-up doctor's appointment was scheduled, and Hood did not attend this appointment. On May 17, 2017, Sedgwick sent a letter to Hood informing him that he had missed an appointment, and that a failure to comply with the treating physician's orders was grounds for denial of his claim. After receiving no response, Sedgwick, by letter, dated June 9, 2017, advised Hood that it was closing his file based on his missed appointment. Hood claims that he was unaware of his missed appointment and alleged violation of OJI policy, and that he did not receive any letter or written communication from the City or Sedgwick that indicated he missed an appointment.

The record is not clear as to why Sedgwick monitored Hood's claim after he was released by his physician. Zaneta Cotton, Sedgwick's claims team lead, testified that OJI involvement terminates after a physician releases a patient back to work. Hood's note releasing him to work without restriction on January 26, 2017 was confirmed to be in Sedgwick's records. Nothing in the record explains why Sedgwick denied Hood's claim, when his purported missed doctor's appointment occurred after his claim with Sedgwick should have been terminated.

Despite this error, on June 9, 2017, Keith received correspondence from Sedgwick, advising that Hood's OJI claim was terminated because he had stopped attending his scheduled treatment appointments. The City was then informed of Hood's OJI claim terminating due to his missed appointment, and subsequently, on June 22, 2017, Hood was removed from payroll. The City's policy is to not send separation letters to departing employees, and thus, the City did not send a separation letter to Hood. Hood, purportedly unaware of his separation, on June 14, 2017, discussed coming back to work with the City's plant manager, Alvin Childers, and Keith, and stated that he was released from OJI. Because Keith received notice of the OJI claim's termination prior to this meeting, he questioned the validity of Hood's release form.

As to Hood's employment opportunities, the Stiles project in which Hood was employed ended in December 2016 while he was on OJI. After the project ended, several temporary employees remained at the plant and eventually were transferred in January 2017 to another division. However, because Hood was on OJI, he was not transferred or retained during this period of time.

Keith spoke with Hood in July 2017 about available temporary positions at Stiles, and he advised him of a heavy equipment operator position that required a Class B Commercial Driver's license, but Hood was ineligible because he did not have the necessary license. Accordingly, Hood did not apply to this position. Hood then applied for a commercial license class through the City so he could bid for a mechanical operator position. According to the City, Hood was given a test to apply, and scored the lowest of the six applicants. The City contends that Hood's performance resulted in him not being selected for the class. Hood testified that he did not take a test, but had an interview with three individuals instead. Whether considered an interview or a test, the City avers that it determined that Hood did not qualify for the class.

Hood, however, alleges that his inability to secure work with the City was due to the City's active retaliation against him for the complaints he submitted with the EEOC and management.

### B. Procedural History

Hood filed two complaints with the EEOC, the first for race discrimination and the second for retaliation. The City responded to both complaints. The EEOC subsequently issued a dismissal and notice of rights letter for each.

On November 29, 2017, Hood filed a *pro se* complaint against the City and Alloway on a printed fill-in-the-blank complaint form provided to him by the district court. Hood alleged discrimination based on race, color, gender, religion, and retaliation, in violation of Title VII. On January 31, 2018, on the magistrate judge's recommendation, the court *sua sponte* dismissed Hood's discrimination claims for failure to state a claim but allowed Hood's retaliation claim against the City to proceed. Neither party objected to the magistrate judge's report and recommendation. After the court partially dismissed Hood's pro se complaint and counsel appeared and moved on Hood's behalf to amend the complaint, the court granted leave for Hood to file subsequent amended complaints.

Hood's operative complaint is his second amended complaint filed on September 6, 2018. Through that complaint, Hood alleged seven causes of action. (*Id.*) Six of those claims are for retaliation, and they arise under 42 U.S.C. § 1981; 42 U.S.C. § 1983; Title VII; the THRA; the TPPA; and Tennessee's common law whistleblower protection. Through those claims, Hood alleges that the City denied him employment and refused to allow him to come to work as a result

of his complaints filed with the EEOC and City management. Hood also brings one claim of racial discrimination[1] under the same statutes as his retaliation claims.

On November 2, 2020, Defendants moved for summary judgment, and on March 10, 2021, the district court granted the motion and dismissed Hood's operative complaint. Hood timely appealed. In his appeal, Hood challenges the district court's orders: (1) dismissing Hood's *initial* complaint; (2) granting Defendants' motion for summary judgment; and (3) dismissing Hood's sexual harassment claim.

## II. DISCUSSION

### A. Summary Judgment Motion

### 1. Standard of Review

This Court reviews a district court's grant of a motion for summary judgment *de novo*. *Thacker v. Ethicon, Inc.*, 47 F.4th 451, 458 (6th Cir. 2022) (citations omitted). Summary judgment is properly granted when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

When evaluating whether a district court properly granted a motion for summary judgment, "evidence [is viewed] in the light most favorable to the party opposing the motion." *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Sch.*, 974 F.3d 652, 661 (6th Cir. 2020) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). This means that the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor,"

---

[1] In Defendants' summary judgment motion, they argued that Hood failed to allege any facts supporting his race discrimination claim, and Hood failed to respond to that argument. Accordingly, the district court found that Hood waived his claim and dismissed Hood's race discrimination claim. Whether the district court's finding of waiver was proper is not before this court, as Hood does not argue his racial discrimination claim on appeal. To preserve an issue for appellate review, a party must develop its argument in its appellate briefing, a requirement that Hood does not meet on this issue. *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 610–11 (6th Cir. 2016); *see also Bolden v. City of Euclid*, 595 F. App'x 464, 468 (6th Cir. 2014).

since "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citations omitted).

## 2. Analysis

Hood's appeal of the district court's dismissal of his original complaint and sex discrimination claim are not properly before this Court. When the district court dismissed Hood's original complaint, it granted leave for Hood to file an amended and second amended complaint without restriction. Because the court allowed Hood to assert all of his claims in his amended complaints, the issue of whether the initial complaint was properly dismissed is moot.

Similarly, Hood's argument that the district court erred in dismissing his sex discrimination claim because the City failed to challenge the issue in its motion for summary judgment fails because Hood's sex discrimination claim was not in his operative amended complaint. Thus, Defendants had nothing to challenge. To preserve an issue for appellate review, "a litigant must state the issue with sufficient clarity to give the court and opposing parties notice that it is asserting the issue" and "provide some minimal level of argumentation in support of it" before the district court. *United States v. Huntington Nat'l Bank*, 574 F.3d 329, 332 (6th Cir. 2009). Hood did not include a sex discrimination claim in his operative amended complaint; consequently, the City and the court were not on notice that Hood was asserting the issue. (*See generally* Am. Compl., R. 28). Accordingly, Hood's sex discrimination claim is not properly before this Court. The Court will review the only issue properly before it: whether the district court erred in granting the City's motion for summary judgment.

### a. Title VII, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and THRA

In dismissing Hood's retaliation claim, the district court found Hood "ha[d] not met his burden to show a causal connection between his protected activity and the City's adverse action." (Summ. J. Order, R. 85, Page ID # 2127). We agree.

Hood alleges retaliation under Title VII, 42 U.S.C. § 1981, 42 U.S.C. § 1983, THRA, TPPA, and Tennessee's common law whistleblower protection, asserting the same facts for each. Because Hood's THRA, § 1981, and § 1983 claims rely on the same facts and allegations as his Title VII claim, this Court will analyze each under the Title VII framework. *See Smith v. City of Toledo*, 13 F.4th 508, 514 (6th Cir. 2021) (In Title VII actions, the Court reviews § 1981 claims "under the same framework we use for [ ] Title VII claim[s]." (citations omitted)); *Salem v. City of Pontiac Sch. Dist.*, 755 F.2d 933, at *2 (6th Cir. 1985) (table) ("Case law suggests that a finding of no discrimination under Title VII precludes such a finding under Section 1981."); *Day v. Wayne Cnty. Bd. of Auditors*, 749 F.2d 1199, 1204 (6th Cir. 1984) (Section 1983 claims are reviewed under the same framework as a Title VII claim when the "only § 1983 cause of action is based on a violation of Title VII."); *Mullins v. Goodyear Tire & Rubber Co.*, 291 F. App'x 744, 745 n.1 (6th Cir. 2008) ("The THRA is a state law analogue to Title VII and the statutes are analyzed identically." (citations omitted)). The Court will review the TPPA and Tennessee's common law whistleblower protection claims separately below.

Title VII forbids employers from retaliating against employees who oppose employment practices that may be unlawful under Title VII. 42 U.S.C. § 2000e–2(a)(1); *see also Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 646 (6th Cir. 2015). A claim for retaliation can be proven with either direct or circumstantial evidence. *See Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010). Direct evidence does not require any inferences to be drawn

regarding what motivated the employer's actions. *Id.* Because Hood does not bring forth direct evidence of retaliation that would "require the conclusion that Defendant[s] unlawfully retaliated against Plaintiff," this Court will apply the *McDonnell-Douglas*/*Burdine* burden shifting framework for circumstantial evidence of retaliation. *Id.*; S*ee Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Under the *McDonnell Douglas/Burdine* framework, Hood has the initial burden to establish a prima facie case of retaliation. *Kirilenko-Ison*, 974 F.3d at 661. A prima facie case of Title VII retaliation requires a showing that a plaintiff: (1) engaged in protected activity; (2) the defendants knew of this protected activity; (3) the defendants subsequently took an adverse employment action; and (4) that a causal connection exists "between the protected activity and the adverse employment action." *Goller v. Ohio Dep't of Rehab. & Corr.*, 285 F. App'x 250, 256 (6th Cir. 2008) (citing *E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir. 1997)). If the plaintiff can make out a prima facie case, "the burden of production shifts to the defendant to show that it had 'a legitimate, non-discriminatory basis for the adverse action.'" *Kirilenko-Ison*, 974 F.3d at 661 (citations omitted). If the defendants satisfy that burden, the plaintiff must then show "by a preponderance of the evidence" that the defendants' stated reasons were pretext for retaliation. *Id.* "On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Id.* (quoting *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000)).

At issue on appeal is whether the district court erred by determining that Hood failed to (1) make out a prima facie case because he did not establish a causal connection between the

protected activity and the adverse employment action, and (2) establish a genuine dispute concerning whether Defendants' non-discriminatory reasons for the adverse actions were pretext.

### 1. *Prima Facie Case*

No party disputes that Hood satisfies his burden as to the first three factors of a prima facie case of retaliatory discharge. He engaged in protected activity (his complaints to the EEOC); the City knew that he engaged in protected activity; and the City took employment action adverse to him when it terminated his OJI medical benefits, did not hire him for available positions, and did not give him notice of his removal from the employee roll. However, Hood fails to identify a causal connection between these actions and his complaints against the City.

The causal connection factor requires the plaintiff to "produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). Evidence that the defendant treated the plaintiff differently from similar employees, or evidence that the adverse action and the plaintiff's exercise of his rights occurred within a short time, can support a finding of causation. *Id.*

#### i. *Termination of the OJI Medical Benefits*

The district court found that the termination of Hood's OJI medical benefits did not point to retaliatory behavior by the City. The district court is correct.

Hood's missed doctor's appointment is immaterial. OJI involvement terminates after a physician releases a patient back to work, and Hood's doctor wrote a note releasing Hood to work without restriction on January 26, 2017. This note was in Sedgwick's records. Hood no longer needed to abide by OJI policy. Sedgwick and Defendants fail to explain why they would penalize an individual for a missed appointment on a closed claim. However, Sedgwick is not the defendant

in this case, and Hood does not allege that Defendants are liable for Sedgwick's actions. Thus, any misstep by Sedgwick is not relevant to Hood's claim.

Turning to the City's involvement. According to the City, on June 14, 2017, Hood informed Keith and Childer that he was released from OJI; however, the accuracy of Hood's statement was questioned. Given that on June 9, 2017, Keith claims that he received correspondence from Sedgwick advising that Hood's OJI claim was closed due to a missed doctor's appointment, his confusion as to Hood's release form was warranted. Sedgwick is the third-party carrier that handles the City's OJI claims, and the City often relied on Sedgwick when determining whether an individual's claim was denied. Thus, the City's release of Hood from payroll after being notified that Sedgwick terminated his claim does not rise to the level of retaliation.[2] There certainly were errors by Sedgwick when processing Hood's OJI claim, but nothing in the record points to the City's contemporaneous knowledge of the mishandling of the claim, therefore, these errors are not ones that point to retaliation. The record illustrates an issue of administrative disorganization; but Hood furnishes no evidence that connects the mishandling of the OJI medical report to his reporting of the City's alleged misconduct.

Importantly, Hood's claim fails because even if the OJI claim was handled correctly and terminated in January 2017, no available position for Hood existed in January. This termination was not unusual based on OJI's and the City's policies, and Hood has provided no evidence to establish that he was treated any differently than an employee in a similar position. The only

---

[2] Hood argues that the policy requiring him to follow his physician's order does not apply to part-time temporary employees, but only applied to "employees occupying regular, full-time positions with the City of Memphis." (Pet'r's Br., ECF No. 46, 18). This is inapposite. The City appears to have carved out an exception for Hood so that he could have access to OJI benefits even though he was a temporary employee. The only reason Hood remained on payroll was to retain his medical benefits. Thus, when the termination of his OJI claim occurred, the reasons to keep him on payroll also terminated.

reason Hood remained on payroll was to ensure he remained eligible for OJI benefits after his knee injury; it was not to serve as assurance that his employment remained after he returned from his injury.

Because Hood has not "produce[d] sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action," his claim fails. *Nguyen*, 229 F.3d at 563.

### ii.   Failure to Hire

The district court did not err when it found that Hood was not retaliated against due to the City's failure to hire him for available positions.

Plaintiff alleged that in early 2017 he was made aware that temporary part-time employees with whom he worked had been transferred to other City positions. This is true because Hood was on OJI and not working on the project at that time; subsequently, he was not transferred or retained. Hood fails to explain how the decision not to transfer him to a different plant, where he was unavailable to physically work, was retaliatory in nature.

Further, Hood was ineligible for the 2017 positions for which he expressed interest. Hood did not have the proper license for the heavy equipment operator position and did not apply. Hood applied for a commercial license class through the City so he could bid for a mechanical operator position but failed to perform well enough to gain entry into the program. Hood does not provide any evidence that establishes that the City evaluated him differently than it evaluated others, or that the City's evaluation of his qualifications for the class was done in bad faith. Hood did not apply for any other positions. Accordingly, Hood fails to establish that if he had not filed a discrimination claim, the City would have hired or retained him for the positions described above. See *Nguyen*, 229 F.3d at 563.

### iii.    Failure to Give Notice of Termination

Hood argues that he was retaliated against when Defendants failed to give him notice of his removal from the employee roll. "Not giving notice was in effect an adverse employment action, by denying him the opportunity to secure state unemployment benefits." (Pet'r's Br., ECF No. 46, 21–22). However, the City does not transmit separation letters. This was a general policy of the City, not in retaliation for Hood's complaint.

Because Hood fails to introduce any evidence that points to an inference that the actions taken by Defendants were in response to his complaints, his claim fails. *See Nguyen*, 229 F.3d at 563. There is no record of Hood being rejected from positions for which he was qualified such that the rejections would point to retaliatory conduct by Defendants. Even if Plaintiff met the prima facie standard, Hood has failed to show that the City's reasons were pretextual.

### 2.    *Pretext*

The City's proffered legitimate non-retaliatory reasons for terminating Hood are that Hood's temporary project ended, and his retention on payroll was only so he could access OJI medical benefits. Once Hood no longer qualified for OJI benefits, the City removed him from payroll. Hood fails to show that Defendants' non-discriminatory reasons for their adverse actions were pretexts.

If the employer meets its burden to show a legitimate non-retaliatory reason for its decision, the plaintiff must show that the employer's reason was pretextual. *See George v. Youngstown State Univ.*, 966 F.3d 446, 462–63 (6th Cir. 2020) (applying pretext to a Title VII retaliation claim). "Pretext is established by a direct showing that a discriminatory reason more likely motivated the employer or by an indirect showing that the employer's explanation is not credible." *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 342–43 (6th Cir. 1997) (citing *Burdine*, 450 U.S. at 256). Unlike the

showing at the prima facie stage, the burden at the pretext stage is onerous: plaintiffs must "demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for [retaliation]." *Alexander v. Ohio State U. College of Soc. Work*, 429 F. App'x 481, 489 (6th Cir. 2011) (quoting *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003)).

To meet that burden, a plaintiff must show "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (quoting *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 839 (6th Cir. 2012) (citations omitted)). The ultimate inquiry in using any of these three approaches is an assessment of whether the "employer made up its stated reason to conceal intentional [retaliation]." *Id.* at 530 (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). A plaintiff cannot show pretext when an employer has an honest belief in its nondiscriminatory reason for discharging an employee and relies on "particularized facts that were before it at the time the decision was made." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)).

Hood has not established by a "preponderance of the evidence" that the City's reliance on Sedgwick's statement that Hood had not been released to work was dishonest, unreasonable, or lacked any basis in fact. This is especially true considering that there was no available job for Hood, regardless of whether the date the doctor released Hood or the date Sedgwick terminated his claim applied. *See Alexander*, 429 F. App'x at 489. Moreover, Hood provides no evidence or argument that the City's decisions not to offer him employment or inform him of his termination was pretextual.

The working conditions described by Hood are abhorrent and unacceptable; and the corrective actions taken by the City appear to be insufficient. However, Hood, unfortunately, did not properly bring to this Court an action related to the discrimination he allegedly faced. Hood alleged and argued a retaliation claim. Because Hood failed to make out a prima facie case for a causal connection between the protected activity and any of the adverse employment actions, and because he failed to show that Defendants' non-discriminatory reasons for the adverse actions were pretext, we affirm the district court's judgment.

### b. TPPA and Tennessee's Common Law Whistleblower Protection

Hood claims that the City violated the TPPA and Tennessee's common law whistleblower protection. The district court dismissed both claims on the same basis it denied Hood's retaliation claims under Title VII.

"Effective July 1, 2014, the TPPA was amended to specifically abrogate[] and supersede[] the common law with respect to any claim that could have been brought under this section." *Williams v. City of Burns*, 465 S.W.3d 96, 110 n.11 (Tenn. 2015) (alterations in original) (quoting Tenn. Code Ann. § 50-1-304(g) (2014)). Therefore, "in cases in which the plaintiff alleges retaliatory discharge for refusing to participate in illegal activities or for refusing to remain silent about illegal activities, the TPPA is the exclusive basis for relief." *Id.* Because Hood's common law whistleblower protection claim is based on the TPPA, it cannot proceed under the common law. *See id.* Accordingly, the Court only need review the TPPA claim.

To establish a claim of retaliation under the TPPA, a plaintiff must prove that plaintiff:

(1) was an employee of the defendant; (2) the plaintiff refused to participate in or remain silent about illegal activity; (3) the defendant employer discharged or terminated the plaintiff's employment; and (4) the defendant terminated the plaintiff's employment *solely* for the plaintiff's refusal to participate in or remain silent about the illegal activity."

*Id.* at 111 (emphasis added) (quoting *Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 26–27 (Tenn. 2011)); *see also* Tenn. Code Ann. § 50-1-304. "[T]he TPPA requires the plaintiff to prove that retaliation for the protected conduct was the *sole* reason." *Williams*, 465 S.W.3d at 110. "[T]he legislature has chosen to enact a stringent standard and set the bar high for recovery under a retaliatory discharge claim pursuant to the [TPPA]." *Sykes*, 343 S.W.3d at 28.

Even if Hood had proved retaliation, retaliation was not the City's *sole* reason for terminating Hood. As discussed in detail above, the OJI medical form was handled poorly; however, Hood presents no evidence to establish that the City intentionally confused the OJI process. Administrative mistakes do not rise to the level of retaliation without a showing of the mistake being intentionally committed in response to Hood's complaint against the City. Furthermore, even finding ill will as to the OJI process, using the actual date Hood was released by his doctor in January, the City was still able to terminate Hood's employment on the basis that no position existed for him as the project he had been employed for was complete.

Hood's TPPA claim fails to establish that his termination was solely caused by his complaints against the City. Accordingly, the Court affirms the dismissal of Hood's TPPA and Tennessee's common law whistleblower protection claims.

### III. CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's judgment.