NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0618n.06

No. 08-6258

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Sep 17, 2010**
LEONARD GREEN, Clerk

JAMES A. SIGMON,                                )
                                                )
    Plaintiff-Appellee,                    )
                                                )
v.                                              )  On Appeal from the United States
                                                )  District Court for the Eastern
APPALACHIAN COAL PROPERTIES, INC.,              )  District of Tennessee
                                                )
    Defendant-Appellant.                   )

Before: BOGGS, MOORE, and GIBSON, Circuit Judges.[*]

BOGGS, Circuit Judge.    James A. Sigmon ("Sigmon"), the owner of numerous coal-producing businesses, signed an agency agreement with Appalachian Coal Properties, Inc. ("Appalachian").  The agreement specified that Appalachian would serve as the exclusive sales agent for Sigmon's businesses.  Pursuant to the agreement, Appalachian contacted several potential purchasers, including KST Consulting Acquisition Company, LLC ("KST").  KST's representatives eventually met with Sigmon to negotiate a sale, but no sale resulted.  Following the meeting, Sigmon terminated negotiations with KST and cancelled the agency agreement with Appalachian, notifying Appalachian that no commissions would be paid.  Appalachian subsequently demanded payment, prompting Sigmon to file suit in the Eastern District of Tennessee.  Sigmon's suit sought a declaratory judgment that he was not obligated to pay Appalachian for its efforts.  Appalachian

_____

[*]The Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

counterclaimed on theories of breach of contract and unjust enrichment, arguing that it had procured

a ready, willing, and able purchaser and was therefore entitled to compensation. Sigmon moved for

summary judgment on Appalachian's counterclaims, and Appalachian opposed. The district court

granted the motion and entered summary judgment. For the reasons set forth below, we now affirm

the district court's ruling.

## I. STATEMENT OF THE FACTS

In 2004, Sigmon began to contemplate selling a number of his coal-producing business

entities. Sigmon consequently reached out to William "Ned" Connolly about brokering a sale of the

businesses on Sigmon's behalf. *Sigmon v. Appalachian Coal Props., LLC*, No. 3:05-cv-00591, 2008

WL 4279867, at *1 (E.D. Tenn. Sept. 15, 2008). To perform this task, Connolly, along with two

other principals, formed Appalachian on March 17, 2004. *Ibid.*

In August 2004, Sigmon and Appalachian entered an agency agreement, which named

Appalachian "as the exclusive agent of record for the sale of the [e]ntities." This "agreement of

exclusivity" was voidable at Sigmon's discretion with thirty days' notice and was set to expire

automatically after six months, though the agreement also provided for that it was renewable at six-

month intervals. The commission structure outlined in the agreement was based upon the "[s]ale

[p]rice" of the entities, and the agreement specifically provided that "[a]ny offer to purchase taken

by the Broker shall be subject to approval by the Seller and it is understood that the Broker will not

obligate or commit the Seller to the sale of the Entities without the express authorization and

direction of the Seller."

Once the agency agreement was in place, Appalachian contacted a number of potential buyers, among whom was KST Consulting Acquisition Company, LLC ("KST"). *Sigmon*, 2008 WL 4279867, at *1. However, on September 29, 2004, Sigmon terminated the agency agreement pursuant to its terms. *Ibid.* Appalachian contends that, on October 5, 2004, Connolly, accompanied by another of Appalachian's principals, met with Sigmon to discuss reinstatement of the agency agreement. *Ibid.* This meeting allegedly resulted in limited reinstatement of the agency agreement, with Appalachian receiving permission to continue negotiations with KST and other potential buyers who had previously expressed interest. *Ibid.* Appalachian was no longer permitted to open negotiations with new prospective buyers without first obtaining Sigmon's consent. *Ibid.* Sigmon concedes that the agency agreement was thus modified and put back in place and that a revised commission structure was negotiated in January 2005. *Ibid.*

Following reinstatement of the agency agreement, Appalachian resumed discussions with KST, eventually arranging for a face-to-face meeting between Sigmon and KST to negotiate the sale of Sigmon's businesses. *Ibid.* On March 9, 2005, Sigmon, KST, and Appalachian met in Knoxville, Tennessee, where Appalachian "contends the parties reached an agreement on all essential terms of the sale." *Ibid.* The terms of that oral agreement allegedly included the following: (1) "$70 million sale price"; (2) "[r]efundable payment of $2 million into escrow"; (3) "[shortened] due diligence evaluation"; (4) "[c]onfidentiality of Sigmon's records"; (5) "[a]greement to cooperate and use commercially reasonable efforts to close the deal within a certain period of time"; and (6) "[revision of] a letter of intent and escrow agreement to reflect these terms." Appellant's Br. at 6. "Sigmon denies that any agreement was reached on March 9, 2005." *Sigmon*, 2008 WL 4279867, at *1.

On March 10, 2005, KST's attorney sent Sigmon a revised letter of intent for his signature. Appellant's Br. at 6. The letter of intent provided:

> Unless and until a definitive asset purchase agreement (the "Definitive Agreement") is signed and except as otherwise expressly provided in this letter, neither KST nor Sellers [*i.e.*, Sigmon] shall be obligated to complete the transactions contemplated by this letter, and it is not intended and shall not create a binding contract upon any party, a commitment letter or an agreement to agree. However, KST and Sellers agree to be bound by the terms and conditions of Paragraphs 7, 8, 9 and 11 and to negotiate the terms of the Definitive Agreement in good faith. The parties agree to cooperate and use commercially reasonable efforts to execute a Definitive Agreement by April 15, 2005.

Sigmon did not sign the letter of intent and apparently has not sold the businesses to KST or any other buyer. *Sigmon*, 2008 WL 4279867, at *2.

On March 16, 2005, Sigmon sent a letter to KST announcing his intention to terminate negotiations. *Ibid*. That same day, Sigmon issued a second letter for the purpose of apprising "all contractors, vendors and other parties who seek to do business with [him]" of certain policies "that have been adopted." The letter stated:

> The Sigmon Group does not enter into or honor verbal agreements and requires that all contracts or agreements and requires that all contracts or agreements with any member of the Sigmon Group be in written form and executed by either James A. Sigmon or Charles Sigmon in order to be binding on any member of the Sigmon group.

The letter concluded by indicating that "verbal discussions, negotiations, conversations, understandings or tentative agreements . . . should not be construed or considered to be a binding contract."

On December 30, 2005, Sigmon, in response to demands from Appalachian for payment of commissions stemming from the KST negotiations, filed an action in the United States District Court

for the Eastern District of Tennessee, "seeking a declaratory judgment that Sigmon was not obligated to pay [Appalachian]." Appellee's Br. at 2. Appalachian answered Sigmon's complaint on February 21, 2006, filing a counterclaim that alleged breach of contract and, in the alternative, unjust enrichment. Sigmon replied to Appalachian's counterclaim on March 13, 2006, and, on May 10, 2006, moved for both dismissal and judgment on the pleadings.

Prior to the court's ruling on Sigmon's motions, a Rule 26(f) meeting was held on November 10, 2006, setting a discovery deadline of November 17, 2007. The district court subsequently dismissed the aforementioned motions on January 25, 2007, noting that, "[t]he issues raised by Sigmon are more properly considered on a motion for summary judgment after the parties have had an opportunity to conduct discovery and develop the evidence."

On November 26, 2007, Sigmon filed a motion for summary judgment. On June 23, 2008, the district court ordered Appalachian to respond to the motion by August 1, 2008. Appalachian subsequently filed a Rule 56(f) motion, requesting additional time to procure affidavits from KST principals Scott Tepper and Marc Merritt. The district court granted Appalachian's Rule 56(f) motion, extending the response deadline until August 7, 2008.

On August 28, 2008, following Appalachian's response to Sigmon's motion for summary judgment, Magistrate Judge H. Bruce Guyten conducted a telephone conference with the parties to resolve a discovery dispute. The conference dealt with "interrogatories and requests for production of documents sent by [Appalachian] to [Sigmon]." Appalachian premised its discovery requests on the "theory that maybe [Sigmon] 'pulled the plug' on the deal, because due diligence by the buyer would have revealed that the plaintiff made misrepresentations to the buyer about the assets which

were the subject of the purported sale." Because fraud must be pleaded with specificity, the Magistrate Judge concluded that Appalachian had "served broad discovery requests about financial matters which are not relevant to any claim or allegation in the proceedings." The Magistrate Judge issued an order explaining his conclusions and indicating that, "if [Appalachian] takes exception to this finding, [Appalachian] has leave to file a motion to compel." This order was later adopted by the district court in its opinion. *Sigmon*, 2008 WL 4279867, at *4.

On September 15, 2008, the district court granted Sigmon's motion for summary judgment. The court dismissed Appalachian's breach of contract claim on the grounds that, "[w]ithout a sale or even an agreement of sale, [Appalachian] has no claim to commissions," and that "there was no contract of sale and no sale to KST or to any other entity." *Id*. at *3. The court based its ruling on the agency agreement's plain recitation "that [Appalachian] is entitled to receive commissions based upon a Sale Price" and "that 'any offer to purchase taken by [Appalachian] shall be subject to approval by [Sigmon] . . . ." *Ibid.* The court also observed that the letter of intent "plainly states that there is no agreement between Sigmon and KST" and that "Sigmon's affidavit states that no agreement with KST was reached at the March 9 meeting, or at any other time." *Ibid.* Though Appalachian submitted "the declaration of Scott Tepper with KST, who states that the parties made a verbal agreement at the meeting," the court rejected the sufficiency of this evidence, noting that "Tepper's declaration is contradicted by the terms of the Letter of Intent which was drafted by KST's attorneys." *Ibid.*

The district court also dismissed Appalachian's unjust-enrichment claim, concluding that "there is a contract (the [a]gency [a]greement) between Sigmon and [Appalachian] that relates to the

subject matter of the unjust enrichment claim." *Ibid.* In the alternative, the court stated that "[Appalachian] conferred no benefit upon Sigmon," finding that Appalachian had proffered no evidence to the contrary. *Id.* at 4.

Lastly, the district court dismissed Appalachian's assertion that, because Appalachian was afforded insufficient opportunity for discovery, Sigmon's motion was unripe for decision. *Ibid.* The district court determined that, "[b]ecause [Appalachian] has not shown that further discovery would aid the court in resolving the pending motion for summary judgment, the court finds that the motion is ripe for decision." *Ibid.*

This timely appeal followed.

## II. STANDARDS OF REVIEW

"We review a district court's grant of summary judgment de novo." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389 (6th Cir. 2008). Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The presence of a genuine issue of material fact is established when "there are disputes over facts that might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conversely, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

With respect to the district court's discovery rulings, the appropriate standard of review is abuse of discretion. *See, e.g, United States v. White*, 563 F.3d 184, 190 (6th Cir. 2009) ("We review

the district court's discovery ruling for abuse of discretion."); *Green v. Nevers*, 196 F.3d 627, 632 (6th Cir. 1999) ("Rulings concerning the scope of discovery are generally reviewed for abuse of discretion."). "This [c]ourt will find an abuse of discretion when it is 'firmly convinced' that the district court committed a clear error." *Stampley v. State Farm Fire & Cas. Co.*, 23 F. App'x 467, 470 (6th Cir. 2001) (quoting *Polk v. Yellow Freight Sys., Inc.*, 876 F.2d 527, 532 (6th Cir. 1989)).

### III.  BREACH OF CONTRACT

We begin with Appalachian's breach-of-contract claim.  In Tennessee, a broker has generally satisfied his contractual obligations under an agency agreement, thus entitling him to commissions, "when he procures a purchaser who is . . . ready, willing and able to buy on the seller's terms." *Parks v. Morris*, 914 S.W.2d 545, 548 (Tenn. Ct. App. 1995); *see also Cheatham v. Yarbrough*, 15 S.W. 1076, 1076 (Tenn. 1891).[1]  In the typical case, the broker prevails by showing that the seller and the buyer have entered into a contract of sale.  *See, e.g., Smithwick v. Young*, 623 S.W.2d 284, 291 (Tenn. Ct. App. 1981); *see also Parker v. Walker*, 8 S.W. 391, 392 (Tenn. 1888) (holding that, for a broker to recover, "the seller and the purchaser must be bound to each other in a valid contract").  However, there is relatively recent case law suggesting that a contract of sale is not a prerequisite to broker recovery.  *See Loventhal v. Noel*, 265 S.W.2d 891, 893 (Tenn. 1954) ("The question is not whether or not there was a valid contract of sale between the [buyers] and the [sellers] but whether or not the [broker] is entitled to commissions") (internal quotation marks omitted); *Pacesetter*

---

[1] Of course, this rule is merely a default, and a broker's duties may be enlarged or diminished by the specific terms of a given brokerage agreement. *See Parker v. Walker*, 8 S.W. 391, 392 (Tenn. 1888).

*Props., Inc. v. Hardaway*, 635 S.W.2d 382, 388 (Tenn. Ct. App. 1981). For purposes of the present analysis, we will assume that a contract of sale, while sufficient, is not always necessary to show that a buyer has been procured.

## A. The Existence of an Oral Sales Agreement

Appalachian's first argument is that the evidence creates a genuine issue of material fact as to whether Sigmon and KST entered into an oral sales agreement at the meeting on March 9, 2005. Under Tennessee law, "[o]ral contracts are enforceable, but persons seeking to enforce them must prove mutual assent to the terms of the agreement, and must also demonstrate that the terms of the contract are sufficiently definite to be enforceable." *Castelli v. Lien*, 910 S.W.2d 420, 426–27 (Tenn. Ct. App. 1983). Naturally, proof of mutual assent and definite terms may be made through witness testimony. *See, e.g., Davidson v. Holtzman*, 47 S.W.3d 445, 454 (Tenn. Ct. App. 2000) ("[T]he only evidence presented at trial regarding the parties' agreement was the testimony of the parties and their correspondence after the agreement was allegedly made."); *Frizzell v. Frizzell*, No. 03A01-9709-CH-00387, 1998 WL 481977, at \*4 (Tenn. Ct. App. 1998) ("In the instant case, the complaint alleges, and [the] testimony, if believed, makes out, an oral agreement.").

To establish the existence of an oral sales agreement, Appalachian offers the affidavits of William Connolly, one of Appalachian's managers, and Scott Tepper, one of KST's principals. Both Connolly and Tepper aver that they were present at the March 9, 2005 meeting. According to their affidavits, the meeting resulted in "[a]n agreement on all essential terms of a sale on Mr. Sigmon's terms." Connolly Aff. at ¶ 12. Connolly and Tepper claim that the terms were as follows: "(1) a sale price of $70,000,000; (2) a refundable payment of $2,000,000 into escrow; (3) a short Due Diligence;

(4) confidentiality of Mr. Sigmon's records; and (5) an agreement to cooperate and use commercially reasonable efforts to close on the deal within a certain period of time." Tepper Aff. at ¶ 6.

However, the affidavits are of little value to the present inquiry. While an affidavit may certainly be sufficient to establish a genuine issue of material fact, *see Courtney v. Biosound, Inc.*, 42 F.3d 414, 418 (7th Cir. 1994) ("The nonmoving party's own affidavit . . . can constitute affirmative evidence to defeat a summary judgment motion."), that is not the case if the affidavit contains only conclusory allegations and naked conclusions of law, *see Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) ("[U]nsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." (citing C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2738 (1983))). Here, the affidavits are entirely devoid of details, asserting only that a sales agreement was reached. Whether an agreement is reached is a legal conclusion that must be determined on the basis of specific facts. For example, a court might conclude that a contract had been formed if it were averred that Sigmon said, "I agree to sell on these particular terms; it's a done deal." No such facts are present in this case. Given this dearth of specifics, it cannot be said that the affidavits offer anything beyond conclusory allegations and bald conclusions of law. Therefore, the affidavits alone are insufficient to create a genuine issue of material fact as to the existence of an oral sales agreement.

Nor is there anything else in the record that might give rise to a legitimate dispute. There is, of course, the draft letter of intent, but the letter, revised by the putative buyer *after* the crucial meeting, clearly states that "neither KST nor [Sigmon] shall be obligated to complete the

transactions contemplated by this letter, and it is not intended to constitute and shall not create a binding contract." There is also the March 16, 2005 letter from Sigmon, which indicates that Sigmon does not enter into verbal agreements and that any "tentative agreements" should not be construed as binding. While one might look at this second letter and infer that Sigmon had at one time in the past entered into verbal agreements, the letter offers no indication of when such agreements might have been reached, with whom, or on what terms. We therefore hold that the March 16, 2005 letter is insufficient to create a genuine dispute as to the existence of a contract of sale. Accordingly, the district court properly granted summary judgment on the issue of whether Sigmon agreed to sell the coal businesses.

**B. Ready, Willing, & Able Buyer**

Appalachian's next argument is that, even in the absence of an oral sales agreement, there is nonetheless a genuine issue of material fact as to whether KST was a ready, willing, and able buyer. As noted above, we will assume that a broker may recover in the absence of a contract of sale. What is clear, however, is that the broker must show that the prospective purchaser—in this case KST—was ready, willing, and able buy *on the seller's terms*. *Parks v. Morris*, 914 S.W.2d at 548. That entails showing (1) what the terms were and (2) that they originated with and were approved by the seller.

To do so, Appalachian points again to the affidavit of Scott Tepper, who avers that, "[o]n March 15, 2005, KST communicated directly with Mr. Sigmon and indicated that we were ready, willing, and able to buy Mr. Sigmon's businesses on Mr. Sigmon's terms." Tepper Aff. at ¶ 9. The affidavit also states that, "[e]ven after receiving [word that Sigmon was not prepared to sell], KST

remained ready, willing, and able to purchase his businesses pursuant to the terms set by Mr. Sigmon and agreed upon at the March 9, 2005 meeting." *Id.* at ¶ 11.

Again, however, the Tepper affidavit falls short of establishing a disagreement as to material facts sufficient to prevent summary judgment. Nowhere in the Tepper affidavit is there any specific indication that Sigmon said, for example, "These particular terms are the terms on which I will sell my companies." The affidavit simply states that the terms described in the draft letter of intent (which indicates that no agreement was reached) were Sigmon's. That statement is conclusory and represents an ultimate legal conclusion, not a specific fact from which a legal conclusion may be derived. *See Galindo*, 754 F.2d at 1216. Appalachian points to nothing else in the record that might furnish the specific factual basis necessary to conclude that Sigmon had accepted, endorsed, proposed, or requested the terms discussed at the meeting and embodied in the draft letter of intent. Thus, we conclude that summary judgment is proper on Appalachian's breach-of-contract claim.

## IV. UNJUST ENRICHMENT

We now turn to Appalachian's claim of unjust enrichment. "[O]ne of the underlying requirements for stating an unjust enrichment claim is that there be no valid and enforceable contract between the parties." *Daugherty v. Sony Elecs. Inc.*, No. E2004-02626-COA-R3-CV, 2006 WL 197090 (Tenn. Ct. App. Jan. 26, 2006); *see also Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998) ("Courts will impose a contractual obligation under an unjust enrichment theory when . . . there is no contract between the parties or a contract has become unenforceable or invalid[.]"). Stated differently, if there is a contract between the parties, there is no need for a quasi-contractual theory of recovery.

In this case, Sigmon concedes that the agent-principal relationship between the parties was governed by the agency agreement. *See* Pl's. Mot. for J. on the Pleadings 9 ("Appalachian plainly alleges, and Sigmon admits, that Appalachian and Sigmon entered into a contract—the [a]gency [a]greement."). Thus, as a matter of law, Appalachian is barred from recovery under the quasi-contractual theory of unjust enrichment. Accordingly, the district court did not err in granting summary judgment on Appalachian's unjust-enrichment claim.

## V. DISCOVERY

Our final task is to determine whether the district court abused its discretion in denying Appalachian's request for discovery relating to Sigmon's reasons for refusing to consummate a sale with KST. Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Given Rule 26(b)(1)'s clear focus on relevance, "[a] district court does not abuse its discretion in denying discovery when the discovery requested would be irrelevant to the underlying issue to be decided." *Green*, 196 F.3d at 632; *see also Elvis Presley Enters. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991) ("The District Court did not abuse its discretion in limiting discovery on this issue, which is not relevant in this case.").

Appalachian claims that, in this case, the impetus for Sigmon's refusal to sell was relevant, as "the seller's reason [for refusing to make a contract of sale] is an element of proof" in establishing a claim for breach of an agency agreement. Appellant's Br. at 26. But Appalachian's argument is incorrect; a broker need only show a seller's "refusal" to consummate a sale to make out a breach of contract claim. *See Cheatham*, 15 S.W. at 1076. The motive for such refusal is irrelevant.

Appalachian erroneously infers from *Gatlinburg Real Estate Co. v. Booth*, 651 S.W.2d 203 (Tenn. Ct. App. 1983), that it must demonstrate that Sigmon's refusal to sell was unjustified. However, the *Gatlinburg* court clearly indicted that it is the seller who must "establish a valid reason for refusing to close the sale" if he wishes to escape liability. *Id.* at 205. Thus, because Appalachian was not required to demonstrate Sigmon's reasons for refusal, Appalachian's discovery requests were properly viewed as irrelevant, and the district court did not abuse the considerable discretion it enjoys in matters related to discovery.

Appalachian also argues that summary judgment was premature because the district court failed to consider fully "an affidavit from [Appalachian's] attorney [filed in conjunction with Appalachian's Rule 56(f) motion] that informed the trial court of Sigmon's discovery abuses." Appellant's Br. at 28. Again, however, the trial court's decision is subject to review only for abuse of discretion. *See, e.g., Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993). Furthermore, in the context of Rule 56(f) motions, "[i]f the plaintiff makes only general and conclusory statements in his affidavit regarding the needed discovery . . . it is not an abuse of discretion for the district court to deny the request." *Cardinal v. Metrish*, 564 F.3d 794, 797-98 (6th Cir. 2009).

The affidavit at issue, which contains references to Sigmon's "fail[ure] to provide proper Discovery Responses" and "numerous evasive and incomplete answers to . . . interrogatories," provides little by way of specific information that Appalachian hopes to glean. Indeed, Appalachian's attorney suggests that additional discovery would simply "provide further information to establish genuine issues of material fact." As a consequence, the district court was well within

its discretion in concluding that "[Appalachian] has not shown that further discovery would aid the court in resolving the pending motion for summary judgment. *Sigmon*, 2008 WL 4279867, at *4.

## VI.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment.