NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0439n.06

No. 22-1033

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

MICHAEL MCCORMICK

    Plaintiff-Appellant,

v.

JOSEPH M. GASPER, in his individual and
representative capacities; MICHIGAN
STATE POLICE, an agency of the State of
Michigan,

    Defendants-Appellees.

|  |
|---|
| **FILED** |
| Nov 01, 2022 |
| DEBORAH S. HUNT, Clerk |

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

OPINION

Before: COLE, CLAY, and MATHIS, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiff Michael McCormick appeals the district court's order granting Defendants, Joseph Gasper's and the Michigan State Police's ("Gasper," or "MSP," respectively) motion for summary judgment on Plaintiff's Title VII and 28 U.S.C. § 1983 discrimination and retaliation claims. Plaintiff's amended complaint alleges race and gender-based discrimination and retaliation. For the reasons set forth below, we **AFFIRM** the district court's order granting Defendants' motion for summary judgment.

## I. BACKGROUND

### A. Factual Background

Plaintiff, Michael McCormick, was not promoted to a position that he desired to obtain. In response, he filed suit in federal court alleging that the Michigan State Police ("MSP") discriminated against him because he is a white male and retaliated against him because he had

previously voiced his concern that he had been passed over for a different promotion in favor of a younger Black female.

McCormick began his career with the MSP in 1990. He held a number of different positions as he moved up in the ranks, eventually becoming a Lieutenant ("Lt.") 14. In 2015, he had recently been appointed the acting Section Commander of Internal Affairs and he hoped to serve as the permanent section commander. When the permanent position was posted, he, along with three other individuals, applied for the job. Two of those applicants held the same rank as McCormick, Lt. 14, but one of the applicants, Twana Powell, a Black female detective sergeant, was one level below the other applicants. A panel consisting of Major Greg Zarotney, Captain Thomas Deasy, and Human Resources ("HR") Director Stephanie Horton interviewed all four candidates and selected Twana Powell. McCormick was "crushed" and "could not believe" that Twana Powell had become his boss. (Pet'r's Br., ECF No. 24 at 18.)

McCormick continued to work in the section under Powell, who rated McCormick as high-performing while also noting that his "effectiveness could be improved by not dwelling on promotions and or assignments not offered to him." (Op. and Order, R. 75, Page ID #800.) Meanwhile, the loss of the promotion to Twana Powell "continued to eat away" at McCormick, to the extent that he took a two-week leave of absence and undertook therapy to manage his anger in February 2017. (Pet'r's Br., ECF No. 24, at 19.) In March 2017, McCormick transferred to a position as Assistant Post Commander in Oak Park, reporting to Lt. Joseph Brodeur, who in turn reported to Captain Deasy. McCormick was still upset about what he perceived as discrimination against white men: he complained about it to anyone who would listen on an almost daily basis. In March 2018, he completed a worksite survey and wrote that being passed over for a promotion when he thought was more experienced than the individual selected was "a blatant example of

reverse discrimination and nepotism." (*See* Michigan State Police Work Site Inspection Survey, R. 70-19, Page ID #724; Pet'r's Br., ECF No. 24 at 20.) His survey response also referenced another instance where a minority was double promoted over more experienced individuals. After his survey response was submitted, Brodeur informed McCormick that Captain Deasy wished to speak to him about his survey responses. Deasy did not end up speaking with McCormick and the survey responses were not mentioned again until he applied for another promotion to serve as a post commander in May 2019.

In May 2019, the Second District Inspector position, reporting to Captain Deasy, opened. Captain Gasper, who had been newly appointed to serve as Director of the MSP in January of 2019, reportedly wanted to increase diversity in the second district. Gasper had his chief of staff—Major Greg Zarotney—call Captain Deasy to request that inspector James Grady, a Black male, be transferred to that position. According to Zarotney, Deasy did not want Grady.

After Brodeur was promoted to the inspector position, he promoted Keyonn Whitfield, a Black male lieutenant, to serve as acting post commander. McCormick decided to apply for the permanent post commander position because he felt that Whitfield was unqualified. Before he applied, McCormick heard from a colleague that a *quid pro quo* deal had been struck wherein Gasper permitted Deasy to promote Brodeur to the second inspector position, if Deasy promoted a minority to serve in Brodeur's former position as post commander.

To be considered for the position, McCormick was required to obtain Brodeur and Deasy's endorsements on a PD-35 form. Both Brodeur and Deasy completed the form and recommended McCormick for the position. Brodeur's written responses on the PD-35 were positive, but he testified later that many of those responses had been filled in by McCormick and that he had signed his name at the end of the form. At his deposition, Brodeur testified that he regretted signing the

form and stated he should have indicated that McCormick would not be a successful post commander due to his negative attitude and because he would "tell anybody who will listen that he doesn't want to be there, that he's only there for the money, that he never wanted to be back in the Second District." (Op. and Order, R. 75, Page ID #806; Dep. Tr. Joseph Brodeur, R. 70-4, Page ID #623.) Captain Deasy's response was not as positive. Although he recommended McCormick for the position, Deasy indicated that McCormick appeared "disengaged, if not openly disgruntled at times, and appears largely disinterested in being part of the district command team. Further, when not selected in the past he has made unsupported allegations of impropriety and bias rather owning his own failures." (Am. Compl., R. 10-3 at Page ID #115.)

After reading Deasy's comments on the PD-35 form, McCormick withdrew his application. McCormick believed that Deasy was retaliating against him for the comments he made on the 2018 survey. Whitfield was eventually selected for the permanent post commander position, over another candidate who was white and male. McCormick stayed in his position until December 2019 when he asked for and received a lateral transfer to the unit commander position in Lansing. He then transferred laterally again to the operations section in Lansing.

In the backdrop of McCormick's failure to obtain a promotion is Gasper's diversity initiatives for the MSP. Once Governor Gretchen Whitmer appointed Gasper as Director of the MSP in January 2019, Gasper convened two director's meetings, in February and May of 2019, where he emphasized that diversity was a priority for the agency. In October 2019—months after McCormick applied for and withdrew from consideration for the post commander position— Gasper held a fall forum during which he released a strategic plan for 2020-2022. During this forum, Gasper allegedly: (1) reiterated that diversity was the department's number one priority; (2) said that individuals should not think of themselves but the agency as whole if denied a

- 4 -

promotion for the sake of diversity; and (3) stated that the MSP is "way too White [*sic*] and way too male." (Am. Compl., R. 10, Page ID #102; Mot. Summ. J., Ex. D, R. 63-4; Pet'r's Br., ECF No. 24 at 16, 35, 37.)

## B. Procedural History

In August 2020, McCormick filed suit against the MSP and Director Gasper alleging that Defendants violated federal law by unlawfully discriminating and retaliating against him on account of his race and gender. He amended his complaint to assert discrimination and retaliation claims against both Gasper and the MSP pursuant to 28 U.S.C. § 1983 and Title VII of the Civil Rights Act. The parties stipulated to a dismissal of the § 1983 retaliation claim against Gasper. After a full briefing and oral argument, the district court granted Defendants' motion for summary judgment on all remaining claims.

Plaintiff thereafter filed this timely appeal. On appeal, he argues that the district court erred by granting Defendants' motion for summary judgment on the discrimination claims against Gasper and MSP, and on the retaliation claim against MSP.

## II. STANDARD OF REVIEW

This Court reviews a district court's grant of a motion for summary judgement *de novo*. *See Thacker v. Ethicon, Inc.*, 47 F.4th 451, 458 (6th Cir. 2022). Summary judgment is properly granted when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

When evaluating whether a motion for summary judgment was properly granted, "this Court views the evidence in the light most favorable to the party opposing the motion." *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Sch.*, 974 F.3d 652, 660 (6th Cir. 2020) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). This means that the "evidence

of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," since "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### III.   ANALYSIS

#### A.  Section 1983 and Title VII Discrimination Claims Against Defendants

Plaintiff contends that the district court erred by granting summary judgment for the Defendants on his reverse discrimination claims, arguing that there was both direct and circumstantial evidence supporting his claim that race was a motivating factor in the decision to promote another candidate to the post commander position.[1]  Because both Title VII and § 1983 prohibit discriminatory employment practices by public employers, both claims may be examined

---

[1] Through his complaint, Plaintiff argued that his claims should be analyzed under a mixed-motive framework, wherein a Plaintiff need only present evidence that a protected characteristic was a *motivating* factor in an adverse employment action.  Plaintiff failed to raise this argument in his response to the motion for summary judgment or on appeal to this Court.  Significantly, a mixed-motive framework does not require the use of the *McDonnell-Douglas* burden-shifting framework.  It is not an onerous standard and allows a plaintiff to prevail on a motion for summary judgment by providing circumstantial evidence that race was a "motivating factor" in an employment practice.  *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 400 (6th Cir. 2008).  Although the District Court determined that the outcome would still be the same using a mixed-motive framework, this Court declines to make such a determination since the matter was not briefed by Plaintiff before the district court nor raised on appeal.  Matters that are not squarely addressed before the trial court nor raised on appeal are deemed waived.  *See Hashem-Younes v. Danou Enterprises Inc.*, 311 F. App'x 777, 779 n.1 (6th Cir. 2009) (noting that "[i]ssues that are not squarely presented to the trial court are considered waived and may not be raised on appeal.") (quoting *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1172 (6th Cir. 1996)); *Griffin v. Finkbeiner*, 689 F.3d 584, 594 n.7 (6th Cir. 2012) (noting that "[a]lthough the City challenged whether Daugherty's claim should be analyzed under a mixed-motive framework before the district court, it did not do so in its appellate brief and has thus waived the issue."); *see also Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 649 (6th Cir. 2012) (noting that plaintiff triggers mixed-motive analysis by using the "motivating factor test in the complaint **and** responsive pleadings.") (emphasis added).  This Court's analysis proceeds under a single-motive theory.

and analyzed together. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003) (citing *Weberg v. Franks,* 229 F.3d 514, 522 (6th Cir. 2000)). A plaintiff may prove a discrimination claim by bringing forth either direct or circumstantial evidence. *Romans v. Michigan Dep't of Hum. Servs.*, 668 F.3d 826, 835 (6th Cir. 2012).

### 1. Direct Evidence of Reverse Discrimination

Plaintiff argues that Gasper's comments, made during the February and May director's meetings, and particularly those articulated at the fall forum on October 8, 2019, were direct evidence of a facially discriminatory policy. This includes the strategic plan that Plaintiff refers to as the "Affirmative Action Directive," the statement that diversity is the number one priority of the department, that individuals "should take one for the team" if denied a promotion for the sake of diversity, and that the MSP is "way too White [sic] and way too male." (Pet'r's Br., ECF No. 24 at 15–16, 35–37; Am. Compl., R. 10, Page ID #101–02.) McCormick also alleges that Gasper's "Affirmative Action Directive" required the department to "set aside 25% of the positions within the MSP for minorities and 20% for females." (Pet'r's Br., ECF No. 24 at 37.)

Gasper admits that he stated that diversity is a goal of the department but denies that he said that the MSP is "way too White and way too male," noting that he "could have referenced the obvious appearance of the department being predominantly white, being predominantly male and our goal, for decades, to be as diverse as we can be, to represent the state of Michigan the best we can." (Dep. Tr. Joseph Gasper, R. 70-14, Page ID #710.) Gasper also contests that he said that individuals should "take one for the team," noting that he "wouldn't have [said that] because, again, we don't . . . make hiring decisions based on diversity, we don't make promotional decisions based on diversity, so there wouldn't be a situation where somebody was denied a promotion based on that." (*Id.* at Page ID #711.)

Direct evidence of reverse discrimination is evidence that, if believed, "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Thompson v. City of Lansing*, 410 F. App'x 922, 929 (6th Cir. 2011) (quoting *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 570 (6th Cir. 2003)). Direct evidence does not require any inferences to conclude that an adverse employment action was motivated at least in part by race. *See Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 915 (6th Cir. 2013). Any direct evidence that is put forward "must prove not only discriminatory animus, but also that the employer actually acted on that animus." *Johnson v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 502 F. App'x 523, 534 (6th Cir. 2012) (citing *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006)).

As the district court determined, Gasper's comments were not direct evidence of discrimination. First, Gasper's comments were made in October of 2019, six months after McCormick applied for and withdrew from the post commander position. Second, even if Gasper's comments in October were merely repetitive or more explicit versions of a diversity policy he had articulated throughout the year and beginning with his appointment in January of 2019, they were not in themselves discriminatory. In a similar reverse discrimination case, this Court determined that "statements reflecting a desire to improve diversity do not equate to direct evidence of unlawful discrimination." *Johnson*, 502 F. App'x at 535. In *Johnson*, this Court examined several statements made by a police department spokesperson that diversity in the force that mirrored the population of the city was a goal of the police department. *Id*. at 525-30. In McCormick's case, the district court determined correctly that those statements were not direct evidence of discrimination because such statements require an inference that those beliefs about the importance of diversity were applied to the adverse employment decision.

Plaintiff cites to the 25% recruiting targets from the strategic plan as evidence of a facially discriminatory policy setting a quota for the number of minority candidates to be hired within the MSP. This is a mischaracterization of the October strategic plan, which merely indicates a desire to increase the diversity of the applicant pool, and does not commit to or require the hiring of more diverse applicants.

Plaintiff also cites Captain Caldwell's declaration for the proposition that in the last four years he was "unaware of any minority candidates who qualified and applied for promotion that were not selected for promotion unless there were multiple minority candidates vying for the same position." (Pet'r's Br., ECF No. 24 at 37.) This statement, however, is a conclusory allegation about Defendants' conduct, and not direct evidence of discrimination. *See Wilson v. Ohio*, 178 F. App'x 457, 464 (6th Cir. 2006) (noting that a third party's opinions about a defendant's discriminatory viewpoint is not direct evidence since "[c]onclusory allegations and subjective beliefs are insufficient to establish a genuine issue of material fact.").

Plaintiff further argues that the MSP's diversity initiative is direct evidence because it is facially discriminatory employment policy which requires that all "decisions will be made with consideration to the discriminatory policy." (Pet'r's Br., ECF No. 24 at 37–38.) As indicated above, Gasper's statements are not racially discriminatory simply because they indicate a desire to increase diversity within the police force. Gasper was not a decision maker in relation to McCormick's promotion. Statements made by an individual not involved in the decision-making process cannot constitute evidence of direct discrimination. *See Johnson*, 502 F. App'x at 535 (citing *Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000)).

Even if Gasper was a decision maker, those statements would not constitute direct evidence because they are general statements and not made with specific reference to McCormick. Plaintiff

cites *Herendeen v. Michigan State Police*, 39 F. Supp. 2d 899, 906 (W.D. Mich. 1999), where the district court determined that plaintiffs had presented direct evidence of discrimination where managers were required to take race and gender into consideration when making promotion decisions. But *Herendeen* is not binding on this Court and is distinguishable because Plaintiff points to no evidence that members of the MSP were required to consider race and gender when making promotion decisions. Moreover, the Sixth Circuit has repeatedly held that general statements that do not reference the plaintiff and are not made within the context of an evaluation or employment decision cannot be considered direct evidence of discrimination. *Foster v. Michigan*, 573 F. App'x 377, 393 (6th Cir. 2014) (determining that where statements do not specifically mention plaintiff, they are not direct evidence of discrimination) (citing *Griffin v. Finkbeiner,* 689 F.3d 584, 595 (6th Cir. 2012)).

Plaintiff also argues that Gasper became personally involved in ensuring that his diversity policy would be carried out by brokering a *quid pro quo* to ensure that more minorities in the second district were promoted to leadership positions. According to Plaintiff, Gasper's chief of Staff, Major Zarotney, was directed to contact Captain Deasy and suggest that he fill a vacant inspector position with a Black male. Plaintiff suggests that Deasy refused to do so, instead promoting Joe Brodeur to the inspector position, in exchange for promoting a minority to the post commander position vacated by Brodeur.

The district court correctly determined that although the conversation between Deasy and Zarotney regarding transferring James Grady to the second district occurred, the testimony regarding the "*quid pro quo*" was rumor and inadmissible hearsay. (Op. and Order, R. 75, Page ID #817–18.) Appeals courts review a district court's determination about the admissibility of evidence *de novo*. *See United States v. Payne*, 437 F.3d 540, 544 (6th Cir. 2006) (noting that "the

decision that certain evidence constitutes hearsay" is a conclusion of law). Plaintiff cites to no evidence that substantiates the claim of this *quid pro quo*.

In fact, Deasy denied the existence of this *quid pro quo*. Although Major Zarotney also confirmed that the conversation between him and Deasy regarding transferring Grady did take place, Zarotney testified that he brokered no such deal. The only evidence submitted that such a deal had been struck came from Sergeant Aaron Weinrick, who testified that he had heard rumors that "there was a deal possibly made." (Dep. Tr. Aaron Weinrick. R. 70-6, Page ID #663.) This testimony is hearsay because it recounts rumors spread by others offered to prove the existence of a *quid pro quo*. *See* FRE 801(c). Because none of the hearsay exceptions apply, there was not admissible evidence to demonstrate that Gasper was involved in ensuring his diversity policy would be carried out through this hiring process.

Plaintiff has not provided any direct evidence of discrimination. Accordingly, this Court will analyze whether any of the circumstantial evidence presented by McCormick meets the standard to survive summary judgment.

### 2. Circumstantial Evidence

A plaintiff who chooses to prove discrimination using indirect or circumstantial evidence must use the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). This burden-shifting analysis first requires the plaintiff to make out a prima facie case for reverse discrimination. *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008). If the plaintiff makes out a prima facie case, the burden shifts to the defendant to show a legitimate, non-discriminatory reason for their actions. *Id.* If the defendant meets this burden, the plaintiff must provide evidence that this reason is a pretext for discrimination. *Id.*

a. Prima Facie Case

To make out a claim for reverse discrimination, Plaintiff must show: (1) that MSP is the unusual employer that discriminates against the majority; (2) that Plaintiff applied for and was qualified for a promotion; (3) that Plaintiff suffered an adverse employment action when not promoted; and (4) that Plaintiff was treated differently than similarly situated employees who were not members of the protected class. *See Bolden v. Lowes Home Centers*, LLC, 783 F. App'x 589, 594 (6th Cir. 2019); *Johnson*, 502 F. App'x at 536. The district court determined that Plaintiff failed to make out a prima facie case because he voluntarily withdrew his application and did not address the remaining factors. On appeal, Defendants dispute whether McCormick met the second requirement to make out a prima facie case.[2]

Defendants argue that McCormick cannot meet his burden of demonstrating a prima facie case because he withdrew his application from consideration. McCormick argues he is exempt from the requirement to show that he applied for the position, because his application would have been futile due to overwhelming evidence of pervasive discrimination in all aspects of Defendants' employment practices.

The Sixth Circuit recognizes a few limited exceptions to the requirement that a plaintiff show they applied for a position, including in instances where an employer does not provide a formal mechanism for applying for a promotion. *See Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d

---

[2] Defendants' brief also argues that Plaintiff was not qualified for the position due to his anger issues. The district court did not, however, determine that Plaintiff was unqualified, and instead based its determination that Plaintiff failed to make out a prima facie case on Plaintiff's withdrawal of his application. Nonetheless, the record shows that Plaintiff has produced sufficient evidence to show a genuine issue of material fact that he was qualified for the position, including the recommendations submitted by Brodeur and Captain Deasy, the latter of which indicated that McCormick's "experience and training qualify him for the position" despite expressing a reservation about his attitude. (Pet'r's Br., ECF No. 24 at 13.)

565, 576 (6th Cir. 2004) (citing *Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1022 (6th Cir. 2000)). Another exception to the application requirement is when the plaintiff presents "overwhelming evidence of pervasive discrimination in all aspects of [the employer's] internal employment practices, and [that] . . . any application would have been futile and perhaps *foolhardy*." *Bacon*, 370 F.3d at 576 (quoting *Harless* v. Duck, 619 F.2d 611, 617–18 (6th Cir. 1980)).

On appeal, Plaintiff relies on three pieces of evidence to establish that there is pervasive discrimination in all aspects of Defendant's employment practices. First, Plaintiff cites to the testimony of Lt. Colonel Sands that Defendants are promoting Black and female candidates as soon as they meet minimum time in service requirements and delaying posting positions so they can promote those minorities. Second, Plaintiff points to deposition testimony by Lt. Colonel Christopher Kelenske and Lt. Colonel Sands that Gasper demoted or terminated four long serving white male members of his executive team to make way for two females and two Black males. Finally, Plaintiff points to the testimony of Captain Caldwell that the MSP always promotes minorities and females if they are qualified and that there is pervasive discrimination in all aspects of Defendants' employment practice.

This Court has previously indicated that the application requirement may be excused where there is "overwhelming" evidence of pervasive discrimination. *Harless v. Duck*, 619 F.2d 611, 617–18 (6th Cir. 1980) (noting that application requirement would be excused at liability stage for class action plaintiffs were they presented evidence of discrimination in all aspects of defendant's internal employment practices, including in policies that "had been engraved in stone since the 1920's."). In *Harless*, this Court determined that female troopers who were class action members were excused from demonstrating that they had applied for promotions where they had put forward "overwhelming" evidence of discrimination, including facially discriminatory policies as well as

statistical evidence that made it "abundantly clear that the discriminatory policies in hiring, classification, assignment, and promotion were grounded on impermissible and archaic traditional stereotypes." *Id.* at 617. In more recent cases, isolated incidents involving discrimination by a single manager were not sufficient to demonstrate "pervasive discrimination." *See Bolden*, 783 F. App'x at 596. Furthermore, the exception does not apply where a plaintiff's supervisor offers to help the applicant and or where members of the same class as the plaintiff have been promoted. *See Bacon*, 370 F.3d at 576.

Plaintiff's evidence is not sufficient to demonstrate that there is "overwhelming" evidence of pervasive discrimination. The first and second pieces of evidence appear to be related and concern allegations that HR Director Stephanie Horton created a list of minorities within the MSP who would be eligible for promotion to lieutenant colonel in the future. According to that testimony, four of those minorities eventually replaced existing executive leaders. Taken as true, the testimony of Lt. Colonel Sands and Lt. Colonel Kelenske does not indicate that the MSP engaged in unlawful discrimination against white police officers; only that Defendants promoted diverse employees to leadership positions once they met certain qualifications.[3]

Additionally, Captain Caldwell's testimony merely narrates his personal belief—based in part on rumors or allegations he heard from others—that the MSP had failed to promote qualified white males as part of long-standing discriminatory policies that had been "going on for three decades" but had ramped up in "2018, 2019, and long before then." (Dep. Tr. Michael Caldwell,

---

[3] Both Sands and Kelenske testified, though vaguely, about the promotion of four minorities to positions that were previously held by white males. The excerpts of their depositions cited to by Plaintiff do not provide any insight into what motivated the removal of the existing leadership team and what motivated the promotion of the four minorities to those posts. (Dep. Tr. William Sands, R. 70-13, Page ID #704–08; Dep. Tr. Christopher Kelenske, R. 70-17, Page ID #717–19.)

R. 70-11, Page ID #692.) While sworn testimony can support a motion to defeat summary judgment, it must contain more than "conclusory allegations and naked conclusions of law." *Sigmon v. Appalachian Coal Properties, Inc.*, 400 F. App'x 43, 49 (6th Cir. 2010) (determining that affidavit that offered nothing more than "conclusory allegations and bald conclusions of law" did not create genuine issue of material fact). McCormick's testimony does not reveal any additional evidence that supports his beliefs beyond what was alleged in Mr. Caldwell's and Mr. McCormick's complaints. Furthermore, in Caldwell's own case, the district court granted summary judgment to Gasper and the MSP on Caldwell's discrimination claims, determining that he failed to raise a genuine issue of material fact on those claims. Caldwell waived his discrimination claims on appeal. *See Michael Caldwell v. Joseph Gasper, et al*, No. 22-1031 (6th Cir. 2022).

The undisputed facts of this case also make clear that there was not "overwhelming evidence" of pervasive discrimination against white males in the police department. The post commander position that McCormick applied for was made available due to the promotion of Brodeur, a white male. Also, despite holding reservations about his qualifications, Brodeur and Deasy assisted McCormick with his application by completing the recommendation forms required for him to submit his application. Furthermore, Defendants' undisputed evidence makes clear that the MSP was composed of mostly white males. Defendants indicate that in May 2020, the MSP was 89.5% white and 91% male and 71 out of the 77 first lieutenant posts were held by white males. Accordingly, this Court finds Plaintiff fails to make out a prima facie case of employment discrimination because he withdrew his application and there is not sufficient evidence of pervasive discrimination to excuse the withdrawal of his application.

b. Legitimate Non-discriminatory Reason and Pretext

Even if Plaintiff could demonstrate a prima facie case, he has not brought forward evidence to demonstrate that Defendants' hesitance to promote him was pretextual. Defendants provide a legitimate non-discriminatory reason for not promoting him: that he was unqualified due to his "uncooperative behavior" stemming from his loss of the promotion in 2015 to Twana Powell. Defendants argue that McCormick's hostile personality was the reason he would not have received the post commander position had he applied, and put forward testimony from McCormick's own deposition indicating that he admitted demonstrating anger on the job "on a daily basis beginning in September 2015." (Resp'ts' Br., ECF No. 25 at 36–37; Dep. Tr. Michael McCormick, R. 72-1, Page ID #794.)

To show that Defendants' reasons are pretext, Plaintiff must show that the reason "(1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *Block v. Meharry Med. Coll.*, 723 F. App'x 273, 281 (6th Cir. 2018) (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008)). Plaintiff argues his anger was not the reason for refusing to promote him and that an employer "may not use an employee's reaction to discriminatory conduct as a basis for an adverse action." (Pet'r's Br., ECF No. 24 at 46.)

While it is true that an employee's complaints about unlawful discrimination and a hostile work environment cannot be used as evidence of bad behavior, an employee must still put forward evidence showing that the employer's complaints of bad behavior were based on protected activity. *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 652 (6th Cir. 2015) (noting that plaintiff had submitted evidence showing that employer's justification for termination—plaintiff's insubordination—was pretext where there was evidence employer cited the plaintiff's protected comments as evidence of insubordination). In *Yazdian*, this Court found that the plaintiff had put

- 16 -

forward sufficient evidence to show pretext where the employer repeatedly cited the plaintiff's protected comments about discrimination and a hostile work environment as evidence of the plaintiff's insubordinate behavior. *Id.*

In this case, however, Defendants did not take issue with Plaintiff's complaints about discrimination, but rather, with his expressions of unrelenting anger, his unpleasant attitude, and his making it known that he had no desire to work for the MSP and was only collecting a paycheck. Plaintiff only points to evidence that his performance reviews were positive and that he was qualified for the position. Plaintiff does not bring forward evidence to dispute that he expressed his anger on a daily basis and made it known he did not want to work for the MSP. Accordingly, Plaintiff has not met his burden of demonstrating that Defendants' reason for failing to promote him was pretext.[4] We **AFFIRM** the district court's grant of summary judgment on Plaintiff's discrimination claims.

### B. Title VII Retaliation Claim Against MSP

#### 1. Direct Evidence of Retaliation

Plaintiff claims that Defendants retaliated against him for his complaints about unlawful discrimination against white males within the MSP. Plaintiff first argues that Deasy's recommendation for McCormick—in the PD-35 form— is direct evidence of retaliation since it mentions that the recommendation for the post commander position is given with reservation since McCormick "made unsupported allegations of impropriety and bias rather than owning his own failures." (Pet'r's Br., ECF No. 24 at 49.)

---

[4] Because this Court finds that Plaintiff failed to demonstrate direct or circumstantial evidence of race or gender discrimination, it need not analyze whether Director Gasper can be held individually liable.

A claim for retaliation can be proven with either direct or circumstantial evidence. *See Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010). Direct evidence does not require any inferences to be drawn regarding what motivated the employer's actions. *Id.* An employer's "isolated and ambiguous comments are not sufficient to make out a direct-evidence case of employment discrimination." *Weigel v. Baptist Hosp. of E. Tennessee*, 302 F.3d 367, 382 (6th Cir. 2002) (determining that employer's reliance on employee's exit questionnaire—which was generally negative and critical of hospital, but also included reference to complaints made by employee about age discrimination—in deciding not to rehire employee does not constitute direct evidence of retaliatory motive).

In this case, the remarks made in the recommendation do not indicate blatant retaliatory motive or intent because they do not indicate that Deasy expressed reservations about promoting McCormick because of his discrimination complaints in the worksite survey. *See Spengler*, 615 F.3d at 491 (determining that supervisor's comment that plaintiff was being terminated because of his "attitude and interpersonal skills" was not direct evidence of retaliation where plaintiff had made an age discrimination complaint against supervisor). A number of inferences could be drawn about Deasy's motives for expressing this reservation. Instead of retaliatory intent, the comments could also reflect that Deasy believed that McCormick was, in the past, not promoted for legitimate reasons and that McCormick failed to own up to his own deficiencies, instead blaming others for his failure to obtain the promotion. Because an inference must be drawn that Deasy's remarks were motivated by McCormick's claims of discrimination in the worksite survey responses, the recommendation cannot serve as direct evidence of retaliation.

### 2. Circumstantial Evidence of Retaliation

Courts apply the *McDonnell-Douglas* burden-shifting framework when circumstantial evidence of retaliation is brought forward. *See Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). A prima face case of Title VII retaliation requires a showing that plaintiff (1) engaged in protected activity; (2) the defendant knew of this protected activity; (3) the defendant subsequently took an adverse employment action; and (4) that a causal connection exists "between the protected activity and the adverse employment action." *Goller v. Ohio Dep't of Rehab. & Correction*, 285 F. App'x 250, 256 (6th Cir. 2008) (citing *E.E.O.C. v. Avery Dennison Corp.,* 104 F.3d 858, 860 (6th Cir. 1997)). If the plaintiff can make out a prima facie case, "the burden of production shifts to the defendant to show that it had a legitimate, non-discriminatory basis for the adverse action." *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Sch.*, 974 F.3d 652, 661 (6th Cir. 2020). The plaintiff must then show "by a preponderance of the evidence" that defendants' stated reasons were pretext for retaliation. *Id.*

Without determining that the worksite survey responses constituted protected conduct, the district court determined that Plaintiff failed to establish a prima facie case of retaliation because he could not show a causal connection between the survey responses (protected activity) and Deasy's reservations in the PD-35 (adverse action). Plaintiff argues on appeal that (1) the worksite survey responses as well as McCormick's verbal complaints to Deasy and Brodeur about Powell's promotion constituted protected activity; and (2) that there was a causal connection between the survey responses and the alleged adverse action.

Assuming, without deciding, that the worksite survey responses are protected activity and that Deasy's PD-35 comments are an adverse action, Plaintiff fails to demonstrate the requisite

causal connection between those responses and the alleged adverse action.[5] Plaintiff argues that the passage of time between his worksite responses and the failure to promote him should be disregarded for purposes of establishing causation because Defendants "seized on the first opportunity to retaliate" against McCormick. (*See* Pet'r's Br., ECF No. 24 at 51.)

To establish causation, a plaintiff must show sufficient evidence "from which an inference could be drawn that the adverse action would not have been taken in the absence of the protected conduct." *Kirilenko-Ison*, 974 F.3d at 664 (internal quotation marks omitted). An inference of causation can be made "solely from the closeness in time between the point at which an employer learns of an employee's protected activity and the point at which it takes an adverse action against that employee." *Id.* The inverse is also true: "the absence of temporal proximity can be 'fatal' to a plaintiff's prima facie case." *Id.* at 665. The causal connection element is satisfied "only where the adverse employment action occurred within a matter of months, or less, of the protected activity." *Dixon v. Gonzales*, 481 F.3d 324, 334 (6th Cir. 2007). This Court has previously determined that multi-year gaps between the protected conduct and the first retaliatory act is insufficient to establish causation. *Kirilenko-Ison*, 974 F.3d at 664-65.

While this Court recognizes an exception for cases where the defendant retaliated at the first meaningful opportunity, this exception applies only where the plaintiff was not previously within the retaliator's "sphere of authority." *Dixon*, 481 F.3d at 335 (determining that first

---

[5] The district court determined that to the extent that McCormick claims that the failure to promote him was the adverse action, his claim for retaliation cannot succeed because he voluntarily withdrew his application. On appeal, McCormick appears to focus solely on Deasy's recommendation, and the reservations expressed therein, as the retaliatory action. Nonetheless, to the extent that he argues that the failure to promote was the adverse action, his claim fails for the reasons expressed in Section A.2.a., above. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 564 (6th Cir. 2000) (determining that plaintiff failed to establish prima facia case for retaliation for failure to promote because plaintiff did not apply to the position in question).

meaningful opportunity exception did not apply where alleged retaliatory conduct came from second-line supervisor who did not directly interact with plaintiff but "reviewed and signed off on" plaintiff's performance evaluations). In this case, just as in *Dixon*, Deasy—who served as Second District Commander—was Plaintiff's second line supervisor, and had the ability to retaliate against him at any point during the fourteen months between the protected activity and the alleged retaliation. Accordingly, the first meaningful opportunity exception does not apply.

Plaintiff also argues that Defendants' pattern and practice of retaliation also proves causation, asking this court to take judicial notice of the allegations made in the related cases by Captain Caldwell and Inspector Hahn as well as testimony by Sergeant Michael Zarate, McCormick's subordinate, that retaliation is rampant in the MSP. The district court considered this same argument and evidence and determined that these assertions of retaliatory behavior were "vague and conclusory" and therefore insufficient to meet the burden of demonstrating causation. (Op. and Order, R. 75, Page ID #826.) We need not address whether Caldwell and Hahn's testimony is sufficient[6] because Plaintiff must demonstrate that there was a pattern of retaliatory conduct in *his* case to satisfy the element of causation. *See Kirilenko-Ison*, 974 F.3d at 664 (determining that plaintiffs could overcome lack of temporal proximity where they also offered circumstantial evidence suggesting that supervisors and staff threatened them with loss of their jobs for continuing to engage in protected activity).[7] Because Plaintiff offers no other evidence of

---

[6] Hahn and Caldwell have filed appeals in their companion cases.

[7] Even if Plaintiff had set forth a prima facie case of retaliation, for the reasons articulated in Section A.2.b. above, he fails to establish that Defendants' reasons for failing to promote him and recommending him with reservations were pretextual.

retaliatory conduct in his case, he cannot show a causal connection between his protected activity and any alleged adverse action.

## IV.    CONCLUSION

For the reasons stated above, this Court **AFFIRMS** the district court's order granting the motion for summary judgment on Plaintiff's discrimination and retaliation claims.